INHABITANTS OF BRIDGTON *versus* HUGH BENNETT.

The statement of an attorney that he has been retained by a corporation, is received as sufficient evidence of his employment; but this does not authorize a person to maintain a suit in the name of the corporation, when it is instituted and conducted without the authority of such corporation.

Under the Rev. Stat. (c. 97) " any party aggrieved by any opinion, direction, or judgment of the District Court in any matter of law, in a cause not otherwise appealable, may allege exceptions to the same," as well when the suit is by statute process, such as a complaint under Rev. Stat. c. 32, § 7, to compel certain kindred of a pauper to contribute towards his support, as where it is according to the course of the common law.

Exceptions may be taken to a decision of the District Court, upon the right of a town to maintain a suit upon certain testimony.

EXCEPTIONS from the Western District Court, GOODENOW J. presiding.

This was a complaint under Rev. Stat. c. 32, for the purpose of compelling Hugh Bennett to support his father, an alleged pauper of Bridgton.

The counsel for the respondent called for the exhibition of the authority of the counsel to appear for the town, and contended that the complaint was improperly brought without authority of the town, and ought to be dismissed.

On May 13, 1842, Rufus Gibbs of Bridgton entered into a contract with the overseers of Bridgton " to take charge of and support all the persons of whatever age, supported in whole or in part by the said town of Bridgton," for the term of one year, in a particular manner pointed out; and " promises and agrees to clear the town for the said term of one year from all pauper expense, both on account of such paupers as now receive or require aid, and of such as may hereafter become paupers, and to hold the town wholly harmless from all

and every kind of expense arising from or on account of paupers, whether within the town or without, for the term aforesaid," with the exception of one insane person named. It was agreed on the part of the town to pay Gibbs a sum of money therefor, " said Gibbs, or his assigns, to have the entire benefit of the services and labor of said paupers, and of such furniture as they or any of them possess, to be returned at the end of the term." There was nothing said in the agreement with respect to compelling others, whether towns or individuals, to support paupers, or in relation to the recovery of expenses incurred for the support of paupers. The exceptions state, that " it did not appear that there was any vote of said town in relation to said complaint, nor that it was brought by the selectmen or overseers of the poor of Bridgton, nor by the authority of the agent of said town ; but it did appear that the complaint was commenced by said Rufus Gibbs for his own benefit."

The counsel for the respondent objected, that the complaint could not be maintained. The presiding Judge decided, that there was sufficient authority shown, and proceeded to hear and try the complaint. Judgment was rendered for the complainants, " that the respondent pay the sum of sixty dollars up to the present time," Oct. 1843 ; and the respondent filed exceptions to the rulings and judgment.

*Howard & G. F. Shepley,* for the respondent, contended that the complaint was not commenced for the use or benefit of the town, nor by its authority, and could not therefore be maintained for that reason. It was but the suit of Gibbs, for his own benefit, without any right under the town. Towns only can bring such complaints. Rev. Stat. c. 32, § 7 ; *Salem* v. *Andover,* 3 Mass. R. 436 ; *Sayward* v. *Alfred,* 5 Mass. R. 244.

When this complaint was made, Gibbs had been at no expense for the support of the alleged pauper, and the damages were estimated to a time beyond the expiration of his year. Gibbs could not prosecute this suit and recover on his own

Bridgton *v.* Bennett.

account by virtue of his contract. And the contract gives him no advantage of any right the town might have to recover of others.

*H. Carter*, for the complainants, considered that the only question to be decided was this; will the Court reverse the decision of the District Court, allowing of the appearance of the plaintiffs' attorney?

The complaint is by the town, and not by Gibbs. The authority of the attorney to appear for the town was called for, and the District Judge, after hearing evidence, permitted the counsel to appear for the plaintiffs. This is a discretionary power in deciding upon a matter of fact, and this Court will not interfere. Rule 5 of the District Court; *Penobscot Boom Corp.* v. *Lamson*, 16 Maine R. 224.

The opinion of the majority of the Court, WHITMAN C. J. dissenting, was drawn up by

SHEPLEY J. — The statement of an attorney, that he has been retained by a corporation, is received as sufficient evidence of his employment. This, however, does not authorize a person to maintain a suit in the name of a corporation, when it appears to have been instituted without its authority. The bill of exceptions states, that Rufus Gibbs on May 13, 1842, entered into a contract with the overseers of the poor of the town of Bridgton to save the town harmless from all expense on account of paupers having a legal settlement in that town for one year from that date; and that this complaint "was commenced by him for his own benefit." And that "it did not appear, that there was any vote of said town in relation to said complaint, nor that it was brought by the selectmen or overseers of the poor of Bridgton, nor by authority of the agent of said town."

The only ground, upon which Gibbs could claim to maintain this process against the respondent, would be, that the benefit, which might be derived from a judgment against him had been assigned to Gibbs by his contract made with the overseers of the poor. By that contract he was entitled to

the benefit of any service, which could be performed by the paupers; to the use of such furniture, as they might possess; and to a definite sum of money to be paid quarterly. It did not authorize him to institute suits in the name of the town to recover compensation from the paupers for their support, in case they or any of them were or should become able to repay the amount expended for their benefit. Nor did it authorize him to institute suits against their relatives to compel them, if of sufficient ability, to contribute to their support. Nor does he appear to have been entitled by his contract to any benefit, which the town might derive from such sources.

This complaint therefore appears to have been instituted under a misapprehension of his rights under that contract; and without any authority to institute it for the benefit of the town.

A question has arisen, since this case has been under consideration, whether it has been presented in such a manner, as to enable this Court to take cognizance of it.

This question should not be determined by the statute provisions, by which a bill of exceptions was first allowed; or by the subsequent provisions of statutes of other states. The decisions respecting their construction may be of use, so far as a similarity of language and provision may be found in those statutes and in ours, and no further. The effect and use of a bill of exceptions must be determined by our own statute provisions, which are in some respects quite different from those of ancient statutes upon the same subject. Formerly a bill of exceptions was allowed only in a civil action, in which the proceedings were according to the course of the common law. Its use was to lay the foundation for a writ of error. By our statutes it is alike applicable in civil and in criminal process and proceedings. Its use is different. It does not lay the foundation for a writ of error, but arrests all further proceedings in the district court, after the cause is prepared for judgment, that it may be transferred to the superior tribunal. No writ of error can be maintained in such a case; because no judgment can be rendered by the District Court. c. 97, §

18, 21 ; c. 172, § 40. There does not appear to be any reason therefore to conclude, that the legislature in this State could have designed to limit the use of the bill of exceptions to causes, in which the proceedings were according to the course of the common law, from a consideration, that a writ of error can be maintained only in such cases. It is certainly undesirable that our statutes should receive such a construction, as would deprive a party of all remedy whatever for any error occurring in the District Courts, in those numerous and often very important cases, in which the proceedings are not according to the course of the common law, when the errors would not be exhibited by the record. If exceptions cannot be legally taken in the District Court, and sustained in this Court, for matters arising in that Court in such causes, which matters would not be exhibited by an inspection of the record, such must be the rusult. For the writ of *certiorari* can only introduce the record of an inferior tribunal, and that will not exhibit the testimony upon which the judgment was rendered, or enable this Court to determine, whether it was legal or illegal, or whether it was sufficient or insufficient, or whether the law was correctly or incorrectly administered in the most numerous class of such cases. A construction, which would have such an effect upon the rights of parties, should be adopted only from necessity, and because the language would admit of no other rational interpretation. It is difficult to conceive, that a Court, which should adopt it by a strained construction of the language to make it conform to decisions made upon other statutes, containing language similar in many respects, but used under different circumstances, would not be chargeable with the error of preferring the symmetry of the law to its administration in a manner best suited to afford and secure to parties a full examination and fair decision of their rights. Especially, when a literal construction of the language would afford the parties an adequate remedy without producing any serious difficulty or inconvenience. The statute should be found to contain very strong language to authorize a Court to come to the conclusion, that it was the intention of the leg-

islature to deprive a party of all remedy in the class of cases before alluded to. It appears to be admitted, that none such is to be found in our statute; and that a literal interpretation of their language would entitle a party to take exceptions in that class of cases. That it would do so, appears to be too plain to require or to admit of an extended argument. By the eighteenth section of chapter ninety-seven, an aggrieved party is authorized to except to "any opinion, direction, or judgment, of the District Court in any matter of law in a cause not otherwise appealable." It will not be denied, that the term cause is sufficiently comprehensive to include suits by statute process. A term more comprehensive could not have been readily selected. That the word action contained in the nineteenth section was used to include the same causes, and without any intention to restrict or limit the language used in the eighteenth, is shown by the use of the word cause again in the nineteenth with reference to the same description of suits. But if the word action could be considered as the efficient one granting the right, it would not admit of an interpretation, which would limit it to civil actions, in which the proceedings were according to the course of the common law. An action is but the legal demand of a right without regard to the form of the proceedings, by which that right may be enforced. Or as Bracton defines it. *Actio nihil aliud est quam jus prosequendi in judicio quod alicui debetur.* When there is an intention to limit its signification and apply it only to include common law and civil suits, it becomes necessary to use some other word for that purpose with it, such as personal, real, or mixed.

There are no decisions of this Court, which require a departure from the literal interpretation. The case *Sayward* v. *Emery*, 1 Greenl. 291, only decided, that a bill of exceptions could not be taken by virtue of the statute of 1817, to a judgment rendered upon a general demurrer to a plea. And the remarks made by the members of the Court are only applicable to that statute. The language used in the act passed Feb. 4, 1822, with reference to a bill of exceptions, and that used in

the Rev. Stat. is not precisely the same. But no question arose or was decided respecting its construction, in the case of *Dennett* v. *Kneeland*, 6 Greenl. 460. That case was brought before the Court by a writ of *certiorari* presenting the record only. Whatever may be the true construction of the statutes, that will continue to be an appropriate remedy in such cases, when there is no desire to present any thing to this Court dehors the record, and when no exceptions are allowed.

In the case of *Tillson* v. *Bowley*, 8 Greenl. 163, no question arose or was decided respecting a construction of the statute, or the proper mode of presenting the case. It appears however, that the case was either incorrectly presented or acted upon. For several questions, which could not have been presented by the record without the aid of a bill of exceptions, were thus presented and decided, after the record had been presented by a writ of *certiorari*. If no bill of exceptions could be legally allowed under that statute in cases, in which the proceedings were not according to the course of the common law, those exceptions were unauthorized, and the matters thereby presented constituted no part of the record. If those exceptions were properly allowed, the statute required, that further proceedings should have been stayed in the Court of Common Pleas, and that the case should have been presented on the exceptions. This did not affect the decision upon the merits. The case of *Loring* v. *O'Donnel*, 3 Fairf. 27, was heard upon a petition for a writ of *certiorari*. Nothing was presented dehors the record, which appears to have been made up from the pleadings and a demurrer to them. The case of *Endicott, pet.* 24 Pick. 339, was decided upon a construction of the statute of Massachusetts, passed in the year 1820. The reason assigned for the conclusion, that the right of alleging exceptions was " confined to cases where the proceedings are according to the course of the common law," is stated to have been, that " in such cases only has this Court the power to re-try the action." And that would seem to have been a most important, if not a conclusive, reason for such a construction. But no such reason can be assigned for such a

construction of our statute; for the nineteenth section provides, that " the Supreme Court shall have cognizance of the cause, and determine the same, as they may actions originally commenced in that Court, and render judgment, *or grant a new trial as in such cases.* The right therefore to try the cause anew, should it be necessary, and to render the proper judgment, whatever that may be, is as fully provided for here, as in any case, that can come before the Court.

There are several decided cases in this State, in which bills of exceptions, allowed under our statutes in cases when the proceedings were not according to the course of the common law, have been entertained and acted upon in this Court. And our existing statute cannot now receive a different construction without overruling them.

The cases of *Keniston* v. *Rowe*, 16 Maine R. 38; *Bradford* v. *Paul*, 18 Maine R. 30; *Woodward* v. *Shaw, id.* 304; *Low* v. *Mitchell, id.* 372, were presented by bills of exceptions exhibiting matters, which would not have appeared otherwise on the record, and which could not have been properly presented in any other mode. If they could not have been presented in that manner, the parties could not have obtained a decision upon the questions presented by them in this Court.

The cases of *Burrill* v. *Martin*, 3 Fairf. 345; *Jones* v. *Pierce*, 16 Maine R. 411; *Seidensparger* v. *Spear*, 17 Maine R. 123; *Rackley* v. *Sprague, id.* 281; *Barnard* v. *Libbey,* decided in the County of Cumberland in 1843; were founded on complaints for flowing lands, and were presented by bills of exceptions. A construction of the statutes, which would have prevented the allowance of bills of exceptions in those cases, would have occasioned consequences like those before named. Many of these cases had been decided before the statutes, by which the bills of exceptions were allowed and entertained, were re-enacted in the revised code; and this Court has decided, that when a statute is thus re-enacted, the judicial construction is presumed to have been adopted by the legislature.

This Court is not deprived of its jurisdiction and right to entertain and decide this case by the provisions of the statute

c. 32. It is true, that the District Court, by that statute, has exclusively original jurisdiction of it. But this is true also in many cases, which may be legally transferred to this Court by exceptions. The rule is well established, which authorizes a Court, when it has rightfully obtained jurisdiction of a cause, to exercise it in the determination of all incidental matters, that may arise out of it. This Court may therefore make any further order respecting this matter according to the provisions of the ninth and twelfth sections. There is, undoubtedly, conferred upon the District Court by the seventh and eighth sections, an authority to perform certain acts named in the exercise of a judicial discretion. And no exceptions can be taken to its exercise, because there would not be a direction or judgment "in any matter of law." The statute provides for exceptions only, when the Court is required to proceed according to established laws; and not, when it acts upon its own judicial discretion; as in the acceptance or rejection of reports of referees; in the grant or refusal of new trials upon petition, and of continuances upon motion. If the exceptions in this case had been taken to the exercise of the discretion conferred by the seventh and eighth sections, they could not have been sustained. But they were taken to the decision of the Court upon the right of the town to maintain the process on the testimony introduced; and upon that right the Court was obliged to decide according to the rules of law.

The exceptions are sustained; and if no further testimony can be adduced showing, that the town prosecutes the complaint for its own benefit, it must be dismissed.

A dissenting opinion was delivered by

Whitman C. J. — The first question to be considered is, will exceptions lie in a case of this kind. If not, we cannot be at liberty to contravene the rules of law by entertaining them. Exceptions, in reference to matters not appearing of record, were first introduced by the statute of Westminster 2. (13 Ed. 1, ch. 31.) This statute authorized the taking of exceptions in all actions, whether real, personal or mixed, 2 Inst.

427; and to all pleas dilatory, peremptory, prayers to be received, oyer of records and deeds, challenge of jurors, and any material evidence offered, and overruled. *Id.* and 1 Ld. Raym. 486. These bills of exceptions were tacked to the record, and laid the foundation for a writ of error. But they were not considered as allowable, except in proceedings had according to the course of the common law; for error would not lie except in such cases. *Groenvelt* v. *Burwell,* 1 Salk. 263; *Melvin* v. *Bridge,* 3 Mass. R. 305. In a proceeding under that statute a judgment could only be reversed or affirmed. If reversed, the plaintiff therein, to obtain redress, must begin *de novo.* It was certainly desirable that this inconvenience should be removed.

Accordingly a statute was enacted (ch. 185 of 1817,) in Massachusetts, Maine being then a part of that State, that any party, thinking himself aggrieved by any opinion, direction or judgment of any Court of Common Pleas in any matter of law, may allege exceptions to the same; and that the Supreme Judicial Court should " have cognizance thereof, and consider and determine the same action in the same manner as they are authorized to do in respect to actions of law reserved in any of the modes prescribed by law, by any one Justice of the Supreme Judicial Court; and shall render judgment and issue execution thereon; or may grant a new trial at the bar of said Court as law and justice shall require."

This language was very comprehensive, and ordinarily would seem to be sufficient to embrace every error supposed to be committed by that Court. It was not limited or restricted by the use of the words "action" or "cause of action," which if used, might seem to imply, that it should be confined to a common law proceeding; yet the generality of the operation has not been adjudged to be co-extensive with the literal import of the enactment. It not unfrequently happens that general terms used by the Legislature, must be taken in a comparatively limited sense. If it were not so, much mischief would sometimes ensue. Cases will arise, which will come within the letter of an enactment, and yet be foreign to

what could have been in the contemplation of its authors. Various matters, decided in the Court of Common Pleas, have been held not to come within the purview of this statute. One class of which consisted of matters depending upon the exercise of powers confided necessarily to its discretion. *Reynard* v. *Becknell*, 4 Pick. 302; *Whitney* v. *Thayer*, 5 ib. 528; *Gray* v. *Bridge*, 11 ib. 189. Another class consisted of such actions as were manifestly intended to be confined to the jurisdiction of that court. *Dean* v. *Dean*, 2 Pick. 25; *Gile* v. *Moore*, ib. 386.

Mr. Justice Preble, in *Sayward* v. *Emery*, 1 Greenl. 291, says, the filing of summary exceptions "should be limited to cases where exceptions may be filed by our common law." Mr. C. J. Mellen, in the same case, expressed his concurrence in the view taken by his associate. The same statutory provision was re-enacted in Massachusetts, in 1820, c. 79, § 5; in reference to which Mr. Justice Morton, in delivering the opinion of the Court, in *Endicott, pet'r.* &c. 24 Pick. 339, admits, that the expressions of the statute are broad enough to cover all cases; yet he says, "we are of opinion that the right of alleging exceptions is confined to cases, where the proceedings are according to the course of the common law; for in such cases only has this Court power to re-try the action."

Since the separation of this State from Massachusetts the same enactment, and substantially if not precisely in the same terms, has been several times repeated. And in our Revised Statutes, c. 97, § 18, the language is, "any party aggrieved by any opinion, direction or judgment of the District Court, in any matter of law, in a cause not otherwise appealable, may allege exceptions." And if exceptions are sustained this Court (§ 19) are to "have cognizance of the same, as they may actions originally commenced" therein. This delegation of power, in this particular, is believed to be identical in substance with that contained in the previous statutes on the same subject. The word "cause," in § 18, was doubtless used as a synonym with the word "action," in § 19. The Legisla-

ture are not supposed to be very precise or technical in the use of language. The subject matter seems to show, that in the use of these different terms they had the same thing in view.

The Revised Statutes have been enacted since the explanations in the cases cited had occurred ; and the sections first quoted must be believed to have been enacted with a full understanding of the expositions, which had. been made ; and the makers of the law in question must be regarded as being content therewith. If not so, it is certainly inexplicable, that the enactment should have been so continued, without variation or further explanatory provision. It is believed, that it is commonly, if not invariably, considered, when a statute is in the same terms re-enacted, after judicial construction has been expressly given to it, that the construction is adopted with it.

Whenever the District Court may be vested with special powers, to be exercised without the intervention of a jury, and its proceedings therein are not in any event to be according to the course of the common law, and this Court is not specially authorised to execute the same powers, summary exceptions will not lie ; for this Court, in such case, upon sustaining exceptions, could not proceed to trial as if the prosecution had been originally commenced in it. In case of an application, like the one preferred in this instance, the powers delegated to the District Court are to be exercised by it in a good measure according to its discretion. No trial by jury, according to the course of the common law, can be had in reference to any part of the proceeding. By § 7 of the statute upon which this process is founded, that Court, *in the county* in which any of such kindred to be charged shall reside," on due hearing, may apportion and assess " such sum as *they* shall judge reasonable," with costs, to be apportioned *at their discretion* among the respondents. By § 8, " *the said Court* may further assess and apportion upon the said kindred, such weekly sum for the future as *they* shall judge sufficient," &c. By § 9, " the *said Court*, may further order with whom of such kindred, that may desire it, such pauper

may live, and be relieved ; and for such time with any or either as *they* shall judge proper." And by § 12, "*the said Court*, may take further order, from time to time in the premises, upon application from any party interested," &c. These powers are all special, and particularly confined to the District Court. The Supreme Judicial Court is not intrusted with any one of them ; and they are inappropriate to its general common law jurisdiction and modes of proceeding.

In the case, *ex parte Pierce*, 5 Greenl. 324, in which an appeal was claimed from the decision of the Court of Common Pleas, which this Court refused to sustain, it was, in addition to another reason for refusing to sustain it, said, "that in this case moreover the statute contemplated further proceedings, from time to time, in the Court of Common Pleas, to increase or diminish the amount assessed, for which purpose it was necessary that the record should remain in that Court."

By § 16, of the same act, the overseers of the poor are authorized to apply to the District Court, "in the county where their town is," in reference to paupers bound out as apprentices or servants, against the master of such apprentice or servant, alleging abuse, ill-treatment or neglect ; and the Court thereupon may discharge the person so bound or not ; and award costs at their discretion "as the complainants may appear to be justified by probable cause or not." Again ; — by § 23 and 25, further powers of a similar character are conferred upon the District Court. In none of these instances could it ever have been intended, that exceptions should be taken so as to bring the applications into this Court, to be here proceeded in : and yet no reason is perceived why they should stand on a different footing from the cases before us.

In *Gile* v. *Moore*, 2 Pick. 306, it was held that summary exceptions would not lie in a process of bastardy ; and in *Dean* v. *Dean, ibid.* 25, that they did not lie in the case of the acceptance or rejection of a report of referees, on a submission entered into before a justice of the peace. These two decisions were doubtless based upon the principle, that the proceedings in them were not according to the course of the

common law; and also upon the position, that powers were conferred, particularly in the former, expressly to be executed by the Court of Common Pleas. They were, however, made in Massachusetts, since this State was separated from it, and are, therefore, not authoritative with us, although entitled to very great respect. But the law here was understood to be in conformity to them, until lately; and it may not be quite clear, that, upon the question being directly made to the Court, it would not now be so considered. Anterior to 1839, the process by *certiorari* had been resorted to, uniformly, to bring questions in a process of bastardy before this Court. *Dennett* v. *Kneeland*, 6 Greenl. 460; *Tilson* v. *Rawley*, 8 *id.* 163; *Loring* v. *O'Donnel*, 12 Maine R. 27. And in *Cook, pet. &c.* 15 Pick. 234, the Court say expressly, that where a writ of error will lie *certiorari* will not; and this is believed to be an undeniable proposition. A writ of error is suable at the pleasure of the party of record; but a *certiorari* only at the discretion of the Court. A party having a right to sue out a writ of his own mere motion, can have no right to apply to the Court for a writ, grantable only at their discretion, to accomplish one and the same object.

But in 1839, *Kenniston & ux.* v. *Rowe*, 16 Maine R. 38; and in 1840, in *Bradford* v. *Paul*, 18 *id.* 30; *Woodward* v. *Shaw*, *id.* 304; *Low* v. *Mitchell*, *id.* 372, all processes in bastardy, exceptions were taken and allowed; and the causes were brought into this Court. In neither does it appear, that it occurred to the counsel or the Court to consider of the propriety of such a procedure. The exceptions, however, in each case were overruled; and so it became less material to consider whether exceptions in such cases should be entertained or dismissed; and the Court were thereby relieved from considering what it would have become indispensable that they should do in case the exceptions were sustained; and how they should have disposed of the provisions, expressly requiring the proceedings, till the case had proceeded to judgment, to be in the Court below; and that the verdict, (c 131, § 10) there returned should be final. There has, therefore,

been no decision upon a question raised, and directly presented to the Court, that exceptions could with propriety be allowed in such a case. And until such a question shall be made, so as to require a decision directly upon it, we may well abstain from any opinion upon the point. One thing we must admit, however, which is, that a *certiorari* could not with propriety have been allowed in the former cases, or that exceptions were erroneously allowed in the latter.

If it should be supposed, that the cases of the flowage of lands, under the act of 1821, c. 45, in which exceptions in several instances have been allowed in the Court below, and entertained in this Court, were analogous to the case at bar, it may well be replied, that the trial by jury, which is a common law proceeding, is there provided for, and an appeal expressly allowed from a decision in such cases, under certain circumstances, to this Court; so that a common law proceeding is contemplated therein; and, when an appeal was allowable, it would bring with it every subsequent incident, which could take place under the process. There was in that act no indication, as in the one on which the case at bar is founded, that all the proceedings were to be confined to the Court below; and to a trial therein without a jury.

Besides; in two of those cases decided in this Court, viz. *Burrell* v. *Morton*, 3 Fairf. 345; and *Jones* v. *Pierce*, 16 Maine R. 411, the exceptions, as were those in the processes in bastardy, were overruled; and without any allusion to the question, as to whether they should have been allowed or not; and without reference to the decisions in Massachusetts, while we were a part of that State; viz. in *Vandusen* v. *Comstock*, 3 Mass. R. 184; *Lowell* v. *Sprague*, 6 *id.* 398; and *Commonwealth* v. *Ellis*, 11 *id.* 462, in which a process by *certiorari* was adopted for a similar purpose. And in two others, viz. *Seidensparger* v. *Spear*, 17 Maine R. 123; and *Rackley* v. *Sprague*, *id.* 281, in this Court, exceptions had been taken, in reference to matters, in regard to which the statute clearly contemplates that this Court should have cognizance; and it is not apparent why the cases should not have come here by

appeal; and why, for that reason, no exceptions should have been allowed.

On the whole, it seems to me very clear, that the exceptions in the case before us should be dismissed.