JOHN B. HAMLIN *vs.* CITY OF BIDDEFORD.

York. Opinion June 4, 1901.

*Drains and Sewers. R. S., c. 1, § 5; c. 16, §§ 2–10. Stat. 1901, c. 268.*

The records of the city council, of the city of Biddeford, clearly establish the fact that the common council originally opposed the construction of the sewer in question, while the mayor and aldermen insisted upon the proposition to build it, and through a committee of conference finally succeeded in procuring the assent of the common council. The oral evidence satisfactorily shows that it was constructed by the street commissioner, at the expense of the city, under the immediate direction of the mayor and aldermen. *Held;* that this action of the mayor and aldermen was not invalidated by the superfluous assent of the common council.

*Held;* that while the sewer complained of continued to be used for the flow of the drainage designed to pass through it, it was the duty of the city to maintain and keep it in repair; and although no action lies for a defect, or want of

sufficiency in the plan or system of drainage adopted in the exercise of a quasi judicial discretion, under powers specially conferred by statute, the duty of keeping the common sewers in repair and free from obstruction after they have been constructed and have become the property of the city under such authority, is a ministerial duty, for neglect of which the city is liable to any person injured. The same is true of the duty actually to construct them with reasonable care and skill. And there is no difference in these duties whether the city has acquired the right to maintain the sewer by prescription, or has laid it under the statute.

*Held;* that the plaintiff had no private drain connected with the sewer in question and was not entitled to drainage through it according to the provision of the statute; but he sustained damage by reason of the injury to the foundation of his stable and the land across which the sewer was laid, caused by the neglect of the city to keep the sewer in proper repair; and this upon obvious principles of justice, as well as upon authority, he is entitled to recover in this action.

This case is not affected by chap. 268 of the public laws of 1901.

On report. Judgment for plaintiff.

Case for default and negligence of the city of Biddeford to keep in proper repair and maintain a sewer running through the plaintiff's premises.

*F. W. Hovey,* for plaintiff.

*J. F. Burnham,* for defendant.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, SAVAGE, FOGLER, JJ.

WHITEHOUSE, J. This is an action on the case, to recover damages alleged to have been sustained by the plaintiff through the failure of the defendant city to maintain and keep in repair a plank sewer, laid across the plaintiff's premises, situated on the westerly side of Granite street and between Granite street and Hill street in the city of Biddeford.

It is contended, in behalf of the city, that the sewer in question is not one for which the city had any legal responsibility, either with respect to its original construction, or its subsequent maintenance and repair.

The statute law of the state regulating the construction and maintenance of "drains and common sewers" is found in chapter sixteen of the revised statutes.

Sections two and three of this chapter are as follows:

Sec. 2. " The municipal officers of a town may at the expense of the town, construct public drains or sewers along or across any public way therein, and through any lands of persons or corporations, when they deem it necessary for public convenience or health, and they shall be under their control."

Sec. 3. " Before the land is so taken, notice shall be given and damages assessed and paid therefor as is provided for the location of town ways."

Section four authorizes abutters upon the line of a public drain and the owners of contiguous private drains to enter and connect with it, on application to the municipal officers, and paying therefor what they determine. It further provides that the written permits given to the applicants so to enter the drain, shall run with the land without further payment.

Section nine provides "that after a public drain has been constructed and any person has paid for connecting with it, it shall be constantly maintained, and kept in repair by the town, so as to afford sufficient and suitable flow for all drainage entitled to pass through it. . . . . If such town does not so maintain and keep it in repair, any person entitled to drainage through it may have an action against the town for his damages thereby sustained."

Section ten requires that "all proceedings of municipal officers aforesaid shall be at their legal meetings," and that "a suitable record shall be made of all such permits, exhibiting the persons and lands to which they apply."

By virtue of these provisions of the statute "the authority to lay out and construct public drains and sewers, as well as the subsequent control over them, is clearly vested, not in the city or town as a corporation, but in the "municipal officers" as representatives of the general government. There is no statute in this state conferring such authority upon the city or town, or upon any officials as agents of the city or town. Nor is such authority necessarily

incident to the exercise of its corporate powers or the discharge of its corporate duties. True, the work must be done "at the expense of the town." A proper system of drainage so directly concerns the public health, that the legislature has deemed it just and right to equalize the burden of constructing sewers by requiring payment to be made from the municipal treasury. But, in exercising the authority conferred upon them by the statute, the municipal officers act, not as agents of the town, but as public officers intrusted with a large discretion and appointed by law to exercise absolute control over the subject matter." *Gilpatrick* v. *Biddeford*, 86 Maine, 534, and cases cited. In this respect "they act upon their own responsibility and are not subject either to the control or the direction of the inhabitants of the town." *Bulger* v. *Eden*, 82 Maine, 352; *Goddard* v. *Harpswell*, 84 Maine, 499; *Brunswick Gas Light Co.* v. *Brunswick Village Corp.*, 92 Maine, 493.

If the plaintiff would recover by virtue of the provisions of this statute, it is, therefore, incumbent upon him to show that the sewer in question was constructed by the municipal officers of Biddeford, acting not as agents of the corporation, but as public officers in obedience to general law; that the city thereby became bound to maintain and keep it in repair "so as to afford suitable flow for all drainage entitled to pass through it;" and that by reason of its failure to keep it in repair, it became liable in this action for the damages sustained by the plaintiff.

It is not in controversy that the sewer was constructed in 1878 at the expense of the city, and the evidence shows that it was built under the direction of the mayor and aldermen and the joint standing committee on streets, composed of members of both branches of the city council. It is not in controversy that it has been deemed and treated by the city, as a part of its system of sewers, from the time of its construction to the commencement of this action. The records of the city council of Biddeford composed of the mayor and aldermen and common council, disclose certain proceedings by the concurrent action of both branches, purporting to be an approval of a proposition to have this drain constructed,

and the final report of the committee of conference appointed by the two branches to consider the matter, appears to have been a recommendation that the drain should be built; and this report of the committee was accepted by both branches of the city council. The subject matter undoubtedly received the attention of both branches, but the action taken by them never assumed the form of a direct vote instructing the street commissioner to build the drain or giving any directions in regard to the manner of building it. In this respect the situation was analogous to that described in *Gilpatrick* v. *Biddeford*, 86 Maine, 534. In that case the court said: "The ordinance of the city of Biddeford, making it the duty of the street commissioner to superintend the building and repair of sewers and make contracts therefor, . . . . obviously was not designed as an attempt to ,usurp the powers vested in the mayor and aldermen by the general statute. It was doubtless primarily intended to apply to the construction of sewers in the public streets, for the safe condition of which the city was responsible. Its peculiar terms were probably the result of a misapprehension in regard to the law. So far as it would have the effect to take away the authority and discretion of the municipal officers respecting the building of sewers, wholly outside the limits of the street, the ordinance, being unauthorized either by the city charter or by general law, is manifestly void. . . . .

"The concurrent action of the city council in referring the matter to a committee and recommending the construction of this drain, may further indicate a failure to distinguish between the municipal officers and the city council, or a misconception of the duties of the two branches. But, it was not a vote to build the sewer, nor an instruction to any agent to build it. It was rather an approval of a general proposition for the completion of several sewers, and it was naturally incident to their joint action in appropriating, and raising a large sum of money, to be expended on the work as required by general law."

It is true, that there is no record of any formal vote by the mayor and aldermen in the case at bar authorizing the construction of the drain, apart from such concurrent action as a co-ordinate branch of

the city council.    But the records clearly establish the fact that the
common council originally opposed the construction of the drain,
while the mayor and aldermen insisted upon the proposition to
build it, and through a committee of conference finally succeeded in
procuring the assent of the common council.    The oral evidence
satisfactorily shows that it was constructed by the street commis-
sioner, at the expense of the city, under the immediate direction of
the "mayor and aldermen," acting, however, to some extent in
conjunction with the committee on streets.

A similar question arose in *Woodbridge* v. *Mayor and Aldermen
of Cambridge*, 114 Mass. 483, and the court held that the order of
the mayor and aldermen for the construction of a common sewer
was within the power conferred upon them by their statute "and was
not invalidated by the superfluous assent of the common council."

In *Collins* v. *Holyoke*, 146 Mass. 298, it was objected that the
sewer was "built under the supervision and direction of a committee,
composed of four members of the common council and three alder-
men," but the court held that the statute, which gave the mayor
and aldermen authority to make the sewer, " did not preclude them
from employing agents to supervise and direct the work," and that
the validity of their assessment was " not affected by the fact that
they called in another person to assist them in making it."

It is true, that in *Darling* v. *Bangor*, 68 Maine, 108, our court
used the following language touching this question :    " To act as a
distinct and separate body is one thing ; for the same persons to
act in connection with and as a part of another body, is another
and a very different thing.    A drain cannot have the sanction of
the statute, unless it is built by the authority and under the sole
responsibility of the body therein provided and in pursuance of the·
provisions therein prescribed."    But, that was an action to enforce
the common law liability of the defendants, and the observation
above quoted was obiter dictum, not necessary to the decision of the
case.    It is, therefore, not a precedent requiring the court to observe
the rule of stare decisis.

" The primary and fundamental idea of a municipal corporation"
says Judge Dillon, " is an institution to regulate and administer the

internal concerns of the inhabitants of a defined locality in matters peculiar to the place incorporated, or at all events not common to the state or people at large; but it is the constant practice of the states, in this country, to make use of the incorporated instrumentality or of its officers, to exercise powers, perform duties and execute functions that are not strictly or properly local or municipal in their nature, but which are in fact, state powers, exercised by local officers within defined territorial limits. . . . . In theory the two classes of powers are distinct, but the line which separates the one from the other is often difficult to trace." 1 Dillon Mun. Corp. § 21.

In view of this composite character and diversified authority of a municipal corporation, it might be anticipated that ordinary municipal officers would sometimes fail to observe the distinction between their functions as agents of the corporation, and their powers and duties as representatives of the public law of the state. By virtue of the statute, the authority to lay out and construct public drains is vested in the municipal officers, and the exercise of their authority does not require the assent of the other branch of the city government, but the work must be done at the expense of the city, and the act of appropriating and raising the money required to defray this expense does involve the co-operation of both branches of the city council. In making their adjudication upon the necessity of a given sewer, the mayor and aldermen are not subject to the direction or control of the city council, but in performing such judicial functions it would not be illegal, but often highly proper and necessary, to confer with the other branch of the council respecting the amount of the appropriation reasonably available for that purpose.

In the case at bar, the mayor and aldermen doubtless undertook in good faith to discharge a duty imposed upon them by law for the public use and benefit. They may not have had a very clear apprehension in regard to the precise nature and limitation of their authority, but they evidently intended to have the sewer in question laid out and constructed at the expense of the city, and in such a manner, as to render the city chargeable for its subsequent

maintenance and repair; and under all the circumstances the work may not unreasonably be held to have been done under the direction of the municipal officers acting, not as agents of the city, but as public officers in the exercise of power conferred by general law.

It is, accordingly, the opinion of the court that while the sewer complained of continued to be used for the flow of the drainage designed to pass through it, it was the duty of the city to maintain and keep it in repair; and although "no action lies for a defect or want of sufficiency in the plan or system of drainage adopted in the exercise of a quasi judicial discretion under powers specially conferred by statute, the duty of keeping the common sewers in repair and free from obstructions after they have been constructed and have become the property of the city under such authority is a ministerial duty, for neglect of which the city is liable to any person injured. The same is true of the duty actually to construct them with reasonable care and skill. And there is no difference in these duties, whether the city has acquired the right to maintain the sewer by prescription, or has laid it under the statute." *Bates* v. *Westborough*, 151 Mass. 174; *Emery* v. *Lowell*, 104 Mass. 13; *Child* v. *Boston*, 4 Allen, 41, 52.

Attention may here be called to chapter 268 of the public laws of 1901, amendatory of section two of chapter 16 of the revised statutes, declaring that the municipal officers shall not construct any public sewer until it shall be authorized by a vote of the town, and an appropriation made for the purpose; but since "actions pending at the time of the passage or repeal of an act are not affected thereby" (R. S., Ch. 1, § 5) no further consideration need be given to this amendment.

In the case at bar, the plaintiff had no private drain connected with the sewer in question and was not entitled to drainage through it according to the provision of the statute; but he sustained damage by reason of the injury to the foundation of his stable and the land across which the sewer was laid, caused by the neglect of the city to keep the sewer in proper repair; and this upon obvious principles of justice, as well as upon the authorities cited, he is entitled to recover in this action.

After a careful examination of the testimony relating to the nature and extent of the injury, it is the opinion of the court that just compensation therefor will require,

*Judgment for the plaintiff for seventy-five dollars.*