**SHAPIRO BROS. SHOE CO., INC.**

v.

**LEWISTON–AUBURN SHOEWORKERS
PROTECTIVE ASSOCIATION et al.**

Supreme Judicial Court of Maine.

May 28, 1974.

Brann & Isaacson by Irving Isaacson, Peter M. Garcia, Lewiston, for plaintiff.

Linnell, Choate & Webber by Frank W. Linnell, G. Curtis Webber, Auburn, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WEATHERBEE, Justice.

By written notice posted on a bulletin board in its plant on January 23, 1973, the Plaintiff shoe company announced to its employees that it "is voluntarily going out of business and shall conclude all of its activities in the manufacture of shoes on February 22, 1973". In fact, however, the company ceased operations on February 5, 1973, thirteen days after the posting of the above notice.[1]

On March 2, 1973 the Defendant labor organization, through its attorney, notified the Plaintiff's attorney by mail that it felt the shoe company is obligated to pay severance pay to employees who had worked at the plant for one year or longer. The letter continued:

"It is essential that this matter be resolved at once, and we are prepared to bring suit within the next few days on behalf of the union itself and as a class action for all union members employed at Shapiro Brothers unless we hear from you within that time regarding arrangements to take care of this matter. The above is not intended as a threat but simply to express our urgency about having this matter resolved immediately."

Two weeks later, on March 16, the Plaintiff instituted the present action for a declaratory judgment and injunctive relief against the union. Later, the three individual Defendants, all of whom had worked for the Plaintiff for over a year until being laid off at the plant's closing, were added by agreement and order of court. The Plaintiff seeks a declaration that paragraphs two and three of 26 M.R.S.A. § 625[2] are unconstitutional. If such

1. As the agreed statement of facts does not suggest otherwise, we assume here that this cessation of business was voluntarily undertaken.

2. Paragraphs two and three read:

"Whenever a person, firm or corporation employing 100 or more employees, is voluntarily going out of business, he shall give one month's prior notice to his employees and failing to give such notice shall pay severance pay of one week for each full year worked by the employee, but such severance pay shall not be more than one month's pay unless by contract the employer shall have agreed to pay a larger amount. No severance pay shall be required to be paid to any employee who has worked for less than one year for the employer and no such severance pay shall be paid if the employee is discharged for a reasonable cause. An employer subject to this section may contract with his employees to pay such employees less than the severance pay required by this section.

If a person, firm or corporation sells his business and there is no cessation of employment in the establishment, no such severance pay shall be required. The requirements of this section shall not apply to any

is this Court's decision, the Plaintiff also desires injunctive relief to prevent the Defendants from exercising any rights or powers under said statute. This case is before us on report under M.R.C.P., Rule 72(b) with an agreed statement of facts, dated May 16, 1973.

While this action has been pending, the Legislature repealed paragraph two of 26 M.R.S.A. § 625 and substituted a new paragraph in its place. P.L.1973, ch. 545.[3] This recent enactment took effect October 3, 1973, ninety days after the adjournment of the Legislature.

The statutory language under attack requires an employer of 100 or more persons to give one month's notice to its employees prior to voluntarily going out of business. Failure to give this notice shall obligate the employer to pay severance pay (up to a maximum of one month's pay) to employees who have worked a year or more for the employer.

The Plaintiff contends that it is not so obligated because the statute violates the due process and equal protection provisions of the Maine and federal constitutions.[4] More specifically, the Plaintiff alleges that 1) certain language in the statute is void for vagueness; 2) the statute requires a

taking of property without compensation; 3) the statute discriminates against employers who voluntarily cease business; 4) the statute discriminates against employers who employ 100 or more people.

■ Prior to any discussion of these constitutional questions, we must determine if this action is now moot due to the aforementioned repeal of the relevant section of 26 M.R.S.A. § 625 by P.L.1973, ch. 545. This Court will not entertain an action which has lost its vitality as a properly justiciable controversy. *E. g.,* Good Will Home Ass'n v. Erwin, Me., 285 A.2d 374 (1971). For reasons following, we feel that the issues presented are properly before us and ready for resolution.

During the summer of 1973, after this case was ordered reported to the Law Court by a Superior Court Justice, the Maine Legislature passed P.L.1973, ch. 545. This new act, as we have noted, repealed the second paragraph of 26 M.R.S.A. § 625 and substituted new language effective October 3, 1973, quoted in footnote 2 supra.

While P.L.1973, ch. 545 did not contain a savings clause, there is a general statutory savings clause (originally enacted by P.L. 1870, ch. 109) for certain actions which is found in 1 M.R.S.A. § 302.[5] It is of par-

---

person, firm or corporation employing employees in seasonal employment only."
All citations to 26 M.R.S.A. § 625 refer to the statute prior to the repeal of its second paragraph in 1973.

3. "Whenever a person, firm or corporation which employs or which has employed at any time during the preceding 12-month period 100 or more persons in any one establishment or place of business, or the successors in interest of said person, firm or corporation, relocates or voluntarily quits that establishment or place of business in an area more than 150 miles from the present location, within or without the State of Maine, he shall pay to each employee at such establishment or place of business, an amount equal to the employees' gross weekly income at the time of relocation multiplied by the number of years the employee has been employed at said establishment or place of business. No such payment shall

be required to be paid if an employee has been employed for less than 5 years at said establishment or place of business or if the employer has a legally binding pension plan covering each employee."

4. The due process and equal protection provisions are art. I, § 6–A of the Maine Constitution and the fourteenth amendment to the United States Constitution.

5. "The repeal of an Act, resolve or municipal ordinance passed after the 4th day of March, 1870 does not revive any statute or ordinance in force before the Act, resolve or ordinance took effect. The repeal of an Act or ordinance does not affect any punishment, penalty or forfeiture incurred before the repeal takes effect, or any action or proceeding pending at the time of the repeal, for an offense committed or for recovery of a penalty or forfeiture incurred under the Act or ordinance repealed. *Actions and proceedings pending at the time of the passage*

ticular interest to us in that it recites that the repeal of an Act does not affect "actions and proceedings pending at the time of the . . . repeal. . . ."

. If there was at the time of the repeal no action pending for the recovery of the claimed severance pay, the issue of constitutionality of the statute may be moot.[6] There is nothing in the record which suggests that the labor union claimed any obligation of the Plaintiff to *it* directly. We are not called upon to decide whether a union's position as collective bargaining representative can *ever* give the union standing to bring civil actions for the collection of unpaid money on behalf of its employees. The record does not disclose that this union had been given any such right or that it had standing to bring any action to recover money on its own behalf or on behalf of the employees. In any event, no such action had been brought by the union.

The parties evidently were concerned over possible lack of standing of the union, as the three individual Defendants were added by agreement simultaneously with the matter being reported to us.

█ The individual Defendants themselves have never filed any independent action seeking to recover from the Plaintiff this statutory severance pay. These Defendants answered Plaintiff's complaint and prayed for a declaratory judgment that the statute is constitutional and that Plaintiff's complaint be dismissed with costs, but they did not make use of the op-

portunity to counterclaim for any amount of severance pay which they claim is due to them as individuals. Should the Plaintiff's complaint for a declaratory judgment and the individual Defendants' answer be construed as constituting not only the parties' prayer that the constitutionality of the statute be determined but also that, if the statute is constitutional, there should be a later judicial determination as to what sums, if any, are due the individual Defendants? If not, there would be no "action . . . pending" by the individual Defendants for severance pay on the effective date of the repeal of the statute and the issue of constitutionality may be moot.[7]

█ Analysis of case history of the general savings clause leads us to conclude that the instant suit seeking declaratory relief is necessarily included within the statutory language. This Court has held many times that civil actions of various descriptions were "pending actions" which would be unaffected by repeal of a statute. *E. g.,* Hamlin v. City of Biddeford, 95 Me. 308, 49 A. 1100 (1901); Whitmore v. Learned, 70 Me. 276 (1879); Estes v. White, 61 Me. 22 (1873). The above cases concerned an action to recover damages for the city's failure to maintain a sewer, an action for forcible entry and detainer, and an action for costs, respectively. It is clear that the savings clause is not intended solely to cover criminal or other specialized actions.

█ The use of an action for declaratory judgment in the case at bar does not distinguish it from those cases previously

---

*or repeal of an Act or ordinance are not affected thereby.* For the purposes of this section, a proceeding shall include but not be limited to petitions or applications for licenses or permits required by law at the time of their filing." (Emphasis added.)

6. It will not be necessary for us to decide whether the statute's provision for severance pay is a "forfeiture incurred before the repeal takes effect" and thus expressly unaffected by repeal, as provided in the general savings clause. As this issue was not raised or argued before us, we consider it inappropriate to discuss it further in this opinion.

7. While declaratory judgment actions are necessarily anticipatory in character, they nevertheless require adverseness of interest and a "real controversy" for the proper presentation of issues. Declaratory judgments are not exceptions to the Court's lack of jurisdiction to render advisory opinions except as mandated by Me.Const., art. VI, § 3. *See, e. g.,* Maine Sugar Industries, Inc. v. Maine Indus. Bldg. Authority, Me., 264 A.2d 1, 4–5 (1970); Jones v. Maine State Highway Comm'n, Me., 238 A.2d 226, 228 (1968).

deemed "pending actions". Long ago, we held that "[a]n action is but the legal demand of a right without regard to the form of the proceedings, by which that right may be enforced". Inhabitants of Bridgton v. Bennett, 23 Me. 420, 425 (1844). In the first declaratory judgment case before this Court, we noted that the Uniform Declaratory Judgments Act[8] affords a new and more flexible right to relief so long as jurisdiction exists in the court. Maine Broadcasting Co. v. Eastern Trust & Banking Co., 142 Me. 220, 49 A.2d 224 (1946). Therefore, while a declaratory judgment may be a different form of action, it is nevertheless an action in the legal sense seeking redress for certain alleged wrongs. City of San Antonio v. United Gas Pipe Line Co., 354 S.W.2d 217 (Tex.Civ.App.1962); Johnson v. Interstate Transit Lines, 163 F.2d 125 (10th Cir. 1947).

This declaratory judgment action was filed March 16, 1973, several months prior to the Legislature's repeal of the statute which is the subject of the action. The current suit thus qualifies as a "pending action" under the general savings clause in so far as it prays for a determination of constitutionality. But does it contain assertions by the named Defendants that any severance pay is actually due them sufficient to avoid mootness of the controversy? We think it does.

The Plaintiff's complaint acknowledged that it was faced with an imminent class action to be brought in behalf of all its employees who claimed to be entitled to severance pay. Instead of waiting for and responding to that action, or to numerous individual actions, it chose to use the more adequate and flexible remedy of declaratory judgment. Maine Broadcasting Co. v. Eastern Trust & Banking Co., supra. It not only sought a ruling on constitutionality of the statute but also asked that the Defendants be enjoined from seeking enforcement of any rights as to severance pay pending the final determination as to constitutionality.

On May 16, 1973 the Plaintiff moved to join the three named Defendants, "former employees of the Plaintiff", as "necessary and proper parties". The three "necessary and proper parties" did not counterclaim, but they did assert in their answer that "said obligation [i.e., to make severance payments] results from the provisions of state law". Also on May 16, 1973—while the statute was still in effect—the parties entered into an agreed statement which includes the admission that each of the named Defendants was in the statutory category of those who would be entitled to severance pay and that none had received such pay.

We believe that the intention of the parties was to make full use of the flexible remedy of declaratory judgment to dispose, in one action, of all claims of all persons who were parties to the action. While the exact amounts claimed by the named Defendants are not certain, it is sufficiently clearly acknowledged that they do claim something and the exact amounts may be asserted by amendment upon remand to the Superior Court. We hold that the individual Defendants did have an action pending at the time of the repeal of the statute and so the constitutional issue is not moot.

*1. Does 26 M.R.S.A. § 625 violate the Plaintiff's due process rights because its wording is too vague?*

In attacking the constitutionality of the statute, the Plaintiff first alleges that the statute is "void for vagueness". The Plaintiff specifically claims that three phrases in the statutory language are totally ambiguous: (1) "going out of business"; (2) "he shall give one month's prior notice"; (3) "[i]f a person . . . sells his business and there is

---

8. 14 M.R.S.A. §§ 5951–5963.

no cessation of employment in the establishment. . . ."[9]

■ The void-for-vagueness doctrine incorporated within due process rests on the assumption that the law must provide reasonable and intelligible standards to guide the future conduct of individuals and to allow the courts and enforcement officials to effectuate the legislative intent in applying these laws.[10] Though concerned primarily with criminal sanctions,[11] the doctrine has been applied in instances where one must conform his conduct to a civil regulation.[12] *E. g.*, Boutilier v. Immigration and Naturalization Serv., 387 U.S. 118, 87 S.Ct. 1563, 18 L.Ed.2d 661 (1967); A. B. Small Co. v. American Sugar Ref. Co., 267 U.S. 233, 45 S.Ct. 295, 69 L.Ed. 589 (1925); Standard Chemicals & Metals Corp. v. Waugh Chemical Corp., 231 N.Y. 51, 131 N.E. 566 (1921); S * * * * S * * * * v. State, Me., 299 A.2d 560, 575 (1973) (Dufresne, C. J. dissenting).

■ While the statute at hand is not criminal in nature, it does provide for a relinquishment of the plant owner's money if proper notice is not given. It is clear that property is protected against deprivation by the state whether or not the state statute appears to be penal. Giaccio v. Pennsylvania, 382 U.S. 399, 86 S.Ct. 518,

15 L.Ed.2d 447 (1966). We believe that the situation presented by 26 M.R.S.A. § 625 potentially involves a loss of property and that the due process protection against vagueness must apply here.

■ A statute is void for vagueness when it sets guidelines which would force men of general intelligence to guess at its meaning, leaving them without assurance that their behavior complies with legal requirements and forcing courts to be uncertain in their interpretation of the law. *See* Prudential Ins. Co. v. Insurance Comm'r, Me., 293 A.2d 529, 539 (1972); Farmington Dowel Products Co. v. Forster Manufacturing Co., 153 Me. 265, 136 A.2d 542 (1957). Such an unacceptable statute would often be "so vague and indefinite as really to be no rule or standard at all". A. B. Small Co. v. American Sugar Ref. Co., supra, 267 U.S. at 239, 45 S.Ct. at 297, 69 L.Ed at 593.

■ We feel that paragraphs two and three of the statute are sufficiently definite to meet the above test. Nowhere in the statute are there terms or phrases which should confuse today's businessman in the planning of his conduct. Though, as the Plaintiff asserts, in some hypothetical instances the language might require interpretation or present formidable factual issues of proof, this does not mean that the

---

9. While the Plaintiff alleges this third defect in the statutory language, it seems clear that it is not applicable to the Plaintiff's situation as presented by the agreed facts. *See* Associated Hospital Service v. Mahoney, 161 Me. 391, 213 A.2d 712 (1965); Town of Warren v. Norwood, 138 Me. 180, 24 A.2d 229 (1941). Therefore, we face only the first two assertions of vagueness.

10. *See* Note, Due Process Requirements of Definiteness in Statutes, 62 Harv.L.Rev. 77 (1948); State v. Johnson, Me., 265 A.2d 711, 716 (1970).

11. A listing of such United States Supreme Court cases is found in Grayned v. City of Rockford, 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2298–2299, 33 L.Ed.2d 222, 227–228 (1972). This Court has most recently analyzed the vagueness issue where penal statutes were involved in State v. Denis, Me., 304 A.

2d 377 (1973); State v. Aucoin, Me., 278 A. 2d 395 (1971); Knowlton v. State, Me., 257 A.2d 409 (1969); Swed v. Inhabitants of Bar Harbor, 158 Me. 220, 182 A.2d 664 (1962); State v. Karmil Merchandising Corp., 158 Me. 450, 186 A.2d 352 (1961).

12. The exact scope of the doctrine as defined by the federal courts is uncertain. While it appears that a non-penal statute often is given more relaxed review by the courts, what the standard of review is remains clouded. *See* Barenblatt v. United States, 360 U.S. 109, 137, 79 S.Ct. 1081, 1098, 3 L.Ed.2d 1115 (1959) (Black, J. dissenting); Winters v. New York, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948); Massachusetts Welfare Rights Organization v. Ott, 421 F.2d 525, 527 (1st Cir. 1969); Note, The Void-for-Vagueness Doctrine in the Supreme Court, 109 U. Pa.L.Rev. 67, 69 n. 16 (1960).

judiciary cannot apply the law in accordance with the spirit of the legislative intent. Giving everyday meaning to the statutory wording indubitably allows the statute to function as a meaningful guideline to those who fall within the statute's edict. The concepts of (1) the voluntary closing of a business and (2) the giving of notice are sufficiently common in normal business experience to meet the guidelines required of this statute. We believe that those who potentially face the prospect of paying severance pay can plan their business conduct accordingly under that statutory language.

*2. Does 26 M.R.S.A. § 625 violate due process because it is a taking of Plaintiff's property without just compensation under improper use of the police power?*

The Plaintiff next suggests that the company's freedom of contract is infringed by the severance pay requirement of the statute in question. It is asserted that the loss of such freedom is equivalent to a taking of property without proper compensation [13] under an invalid use of the police power.[14]

The State in its fullest exercise of sovereignty has the inherent power to pass regulations designed to promote the public health, safety and welfare. Of course, these regulations must appreciably tend to accomplish the objective for which they are enacted by the Legislature. *E. g.*, Ace Tire Co. v. Municipal Officers of Waterville, Me., 302 A.2d 90 (1973); State v. Union Oil Co., 151 Me. 438, 120 A.2d 708 (1956). *Proper* regulation under the police power does *not* amount to a taking of property which could require the payment of just compensation by the State. We must determine if 26 M.R.S.A. § 625 is a valid police power regulation or if its application results in a taking of Plaintiff's property without due process.

The obvious intent of the Legislature in passing paragraphs two and three of the statute was to ameliorate the effects on a community when a large employer voluntarily goes out of business. The required payment of severance pay when inadequate notice of the closing is given was designed to allow laid off employees to receive up to one month's pay. This would necessarily lessen the numbers of persons immediately needing welfare and other assistance from the community or State. It would also enable the affected worker to seek new employment, knowing that in the meantime he would receive at least some compensation after suddenly finding himself without work.

The statute applies only to those who employ 100 or more persons. Such employers would undoubtedly create greater problems for the community and individuals involved if they were to close their businesses. The employer is able to escape from the required payment merely by giving proper notice of one month, which would enable the city and the employees to plan for the loss of many jobs. The amount of severance pay is tailored reasonably to the length of time worked by an employee, those employed the longest having earned the greatest pay. So as not to place undue burdens on the employer, a maximum limit of one month's pay is chosen. Furthermore, no severance pay is necessary when an employee has worked less than a year and, reasonably, has not become totally dependent on the employer and has not demonstrated a stable history

---

13. This prohibition resting in the fifth amendment to the United States Constitution has been applied to the states through the fourteenth amendment. Chicago, Burlington & Quincy R. R. v. Chicago, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897).

14. While the Plaintiff's constitutional attack rests upon Art. I, § 6–A of the Maine Constitution (due process) the issues presented necessarily involve also Art. IV, pt. 3, § 1 ("The Legislature . . . shall have full power to make and establish all reasonable laws and regulations for the defense and benefit of the people of this State, not repugnant to this Constitution, nor to that of the United States.").

of employment with the company. Employees fired for a reasonable cause are not covered by the act, for their discharge would be unrelated to the voluntary closing. Employers whose hiring is seasonal and those who sell without a stoppage of business are exempt, as the effect of their actions on the community would often be minimal.

■ Additionally, the statute specifically leaves untouched the employer's right to contract with the employees as to the amount of severance pay which would be paid following a voluntary closing of the business and failure to give one month's notice. This provision clearly saps much vitality from the Plaintiff's contention that its freedom of contract is deprived by the statute. In any event, this *freedom* to contract is itself necessarily subject to reasonable police power measures intended to promote and preserve the welfare of citizens. *See* Atlantic Coast Line R. R. v. Goldsboro, 232 U.S. 548, 34 S.Ct. 364, 58 L.Ed. 721 (1914); Baxter v. Waterville Sewerage Dist., 146 Me. 211, 79 A.2d 585 (1951).

■ We conclude that the statutory language is a reasonable exercise of the police power in seeking to combat the unemployment crisis created when a large firm voluntarily shuts down on short notice. The Plaintiff nevertheless protests that the statute is unreasonable because it is aimed at a producing cause of unemployment and not the unemployment itself. We do not find that line of reasoning to be persuasive. While the most common form of unemployment relief—the payment of benefits—follows the onset of the condition, not all legislative attempts to deal with these problems must take effect "after the fact". In striking at a sure and primary contributing cause of social and economic unrest—the voluntary closing of a large business—the statute seeks to anticipate and ameliorate these crises. It is clear that the method selected by the legis-

lators is related to the evils sought to be cured or prevented.

As the regulation by statute is a valid police power exercise, there is no unconstitutional taking of property in violation of the due process clause.

*3. Does 26 M.R.S.A. § 625 deny the Plaintiff equal protection of the laws by discriminating invidiously against employers who voluntarily cease business as opposed to those who are forced to go out of business?*

Next the Plaintiff urges that the statute violates equal protection of the laws by discriminating against employers who voluntarily close down a business. We fail to agree.

■ Under the Maine and federal constitutions not all discrimination based on classification is a denial of equal protection. Only invidious—arbitrary or unreasonable—discrimination is prohibited by law. *E. g.*, Williamson v. Lee Optical Co., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); State v. Mitchell, 97 Me. 66, 53 A. 887 (1902). The Legislature may in its wide discretion promulgate legislation which treats some classes differently from others so long as the dissimilar treatment is not arbitrary and is rationally related to the objectives of the statute. In re Spring Valley Development, Me., 300 A.2d 736 (1973).

26 M.R.S.A. § 625 certainly applies only to those employers who voluntarily cease business operations, thereby exempting those who involuntarily go out of business. The only question is whether this classification is reasonable and rational.

The statute attempts, through proper notice of severance pay requirements, to lessen the debilitating impact upon an area of the shutdown of a large business. The Legislature could reasonably conclude that only by regulating those who choose to go out of business might this distress be pre-

vented or reduced in a manner fair to the employer.

Certainly, those who are *forced* to close for whatever reasons are incapable many times of giving a month's prior notice. The law would surely be extremely harsh to expect one who is unable to continue a business due to outside pressures to give proper warning to his employees. The employer himself may not be totally aware of the impending doom. Similarly, the Legislature might feel that those unable to control the closing of their businesses should not in all fairness be *forced to comply* with the severance pay requirement. In those common instances where the involuntariness was mainly a lack of proper finances, the employer would be in no position to pay benefits to his workers, thereby making illusory any severance pay requirement. Those who voluntarily close and are generally in control of their affairs should be more able to plan on giving notice or paying severance benefits when they decide to cease operations.

■■■ It is not necessary for the Legislature to remedy all the evils in a given area when it passes a certain act. In re Spring Valley Development, supra at 752. We believe that the statute at issue is a reasonable and rational attempt to deal with social and economic problems by focusing · on those employers most able to prevent the side effects of sudden unemployment. Mere imperfection in classifications in the area of economics and social welfare does not lead to a constitutional violation. Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Such a classification based on the voluntariness of going out of business is not the invidious discrimination prohibited by equal protection provisions.[15]

*4. Does 26 M.R.S.A. § 625 deny the Plaintiff equal protection of the laws by differentiating between employers who employ 100 or more persons and employers who have less than 100 workers?*

On the same equal protection principles the Plaintiff asserts that the statute improperly applies only to certain large employers, including itself. The Legislature has drawn the line at 100 or more employees.

■■■ The legal guidelines here are exactly those cited in the previous discussion on equal protection. Again we find no constitutional violation occasioned by this discrimination based upon the number of employees.[16]

The problems at which the statute is directed will be solved more easily and effectively by zeroing in on those *large* employers who may voluntarily close a business. The closing of sizable businesses will create greater unemployment and other social headaches than will the shutting down of smaller places of business whose effect may be negligible. Merely because the Legislature must choose a certain point at which statutory coverage will begin does not render the statute unconstitutional.

In Maine Unemployment Compensation Comm'n v. Androscoggin Junior, Inc., 137 Me. .154, 163, 16 A.2d 252, 257 (1940) we tersely held that an unemployment statute applying only to employers who had eight or more employees was not unconstitutional discrimination. We see here no improper legislative attempt to single out employers for attention merely because they employ a certain number of people. Rather, the purposes of the law are undeniably served by limiting its effect to those employers who employ 100 or more employees.

---

15. Voluntariness is similarly the criterion used for eligibility for unemployment benefits under 26 M.R.S.A. § 1193(1).

16. Classification based on numbers has been upheld elsewhere. *E. g.,* New York ex rel. Bryant v. Zimmerman, 278 U.S. 63, 49 S.Ct. 61, 73 L.Ed. 184 (1927) ; State v. McFarland, 60 Wash. 98, 110 P. 792 (1910) ; Ex parte Lewinsky, 66 Fla. 324, 63 So. 577 (1913).

Arguably, all discrimination resulting from the Legislature's choice of a number is arbitrary, for could not it choose 99 instead of 100? Yet, were this to be deemed unconstitutional, no effective regulation by statute could ever be possible in a practical sense. We do not believe that equal protection of the laws turns on such a meaningless and artificial distinction.

 In conclusion, the Plaintiff has failed to meet the burden of persuasion thrust upon it by attacking the constitutionality of a legislative enactment. It is not our duty to sit in judgment as to the efficacy or wisdom of the statute. *E.g.*,

Baxter v. Waterville Sewerage Dist., supra. We find that the second and third paragraphs of 26 M.R.S.A. § 625 (prior to repeal of the second in 1973) are constitutional.

The entry is:

26 M.R.S.A. § 625 (prior to amendment in 1973) is declared to be constitutional. Injunctive relief requested by the Plaintiff is denied. Case remanded to Superior Court for action consistent with this opinion.

All Justices concurring.