## CITY OF KANSAS CITY v. LEMEN.

### (Circuit Court of Appeals, Eighth Circuit. September 18, 1893.)

### No. 270.

1. MUNICIPAL CORPORATIONS—GOVERNMENTAL ACTS OF AGENTS—LIABILITY.

Where the mayor and police of a city close a circus that is being held on ground claimed to have been dedicated as a public graveyard, they act for the city in its governmental, not its corporate, capacity, and the maxim "respondeat superior" does not apply, so as to make the city liable in damages for their action.

2. SAME—CORPORATE ACTS.

A city is not liable in damages for the wrongful act of its mayor and police in closing without color of law an exhibition, with the intent to injure and oppress the owner thereof.

In Error to the Circuit Court of the United States for the Western District of Missouri.

At Law. Action by Frank Lemen against the city of Kansas City, Mo., for wrongfully closing an exhibition held by plaintiff in said city. Verdict and judgment for plaintiff. Defendant brings error. Reversed.

C. O. Tichenor, F. F. Rozzelle, and Frank P. Walsh, for plaintiff in error.

W. C. Scarritt, for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

THAYER, District Judge. Frank Lemen filed in the United States circuit court for the western district of Missouri a complaint against Kansas City, a municipal corporation of the state of Missouri, wherein he alleged substantially the following facts: That he was a citizen and resident of the state of Kansas, and the proprietor of a show and hippodrome; that, desiring to exhibit said show in Kansas City, Mo., on the 3d and 4th days of May, 1892, he, before that time, lawfully acquired from the owners of a certain tract of land situated within the corporate limits of Kansas City the right to give an exhibition thereon, and that he took peaceable possession of said land with the consent of the owner, and erected his tents thereon, and that he also fully complied with all of the ordinances and regulations of the city with reference to such exhibitions as he proposed to give, and obtained a license for the exhibition from the proper city authorities, entitling him to give two exhibitions, for which he paid to the city $20; but that on the day appointed for the exhibition, and just before it was to begin, "the defendant, Kansas City, acting by and through its mayor, police, and other duly constituted and authorized agents, (the said mayor,) personally consenting and directing all things, did willfully, with knowledge that they were acting wrongfully, and without right, and with the intention to harass and oppress the plaintiff, and to break up and ruin his said business, with force and violence come upon said land, and with threats

and violence did stop plaintiff from prosecuting his said business, and did put a stop to the exhibition of the said show, and did then and there threaten and began to tear down and break and destroy plaintiff's said tents and property, and did with force seize upon the person of the plaintiff and arrest him, falsely pretending that he had violated some city ordinance, * * * and did threaten to arrest and. imprison plaintiff's employes unless they desist from carrying on plaintiff's said business, falsely pretending that such employes thereby were violating some ordinance. of Kansas City; and did stop, prevent, and warn the people from coming into plaintiff's said show, and from purchasing tickets thereto, * * * and compel and require plaintiff to cancel his appointments to exhibit his show at the place and times aforesaid, and to remove all his property and effects from said tract of land, and did greatly injure and discredit his said business," etc.

The answer which was filed by the city to such complaint (and we only state the substance thereof, after some portions had been eliminated by a motion to strike out) was as follows: The city admitted its corporate capacity, and that the plaintiff intended, and had in fact made preparations, to give an exhibition at the time and place stated in his complaint. It denied, however, that the plaintiff had the consent of the owner of the tract of land described in his complaint to give an exhibition thereon, and averred, to the contrary, that the title to said tract of land was vested in the city, as trustee, to be held for the purposes of a graveyard, and that it had been so vested and held for more than 30 years, and that the remains of many persons had been buried therein, and that many were still entombed in said tract of land. The city further admitted that a license was issued by it to the plaintiff to give an exhibition on said ground, and that he had paid $20 therefor; but it averred that the city had no power to issue a license for a show in a graveyard; and that the police of the city had notified the plaintiff, prior to the intended exhibition, that he could not give an exhibition on the ground selected, because it was a graveyard, and because an exhibition in such place would be a public nuisance, whereupon the plaintiff had withdrawn from said premises, and had removed his tents elsewhere to a place within the city, and had given an exhibition for two days under the license in question.

To the foregoing answer a reply was filed, which denied that the city held the title to the aforesaid tract of land as a graveyard. It was further averred that in a previous suit brought against Kansas City by certain persons who claimed title to said tract of land it was judicially ascertained and adjudged that the lot was not a graveyard, and that in said suit said last-named claimants had recovered the property; and that Lemen acquired his right to give an exhibition on the premises under the said claimants, they being at the time in the quiet and peaceable possession and enjoyment thereof.

The case was tried before a jury on the foregoing issues, and the plaintiff below recovered a verdict against the city in the

sum of $2,200. To reverse the judgment entered upon such verdict, the plaintiff in error has prosecuted a writ of error to this court.

Several exceptions were taken by the plaintiff in error to the action of the circuit court in admitting testimony and in giving and refusing instructions, but the view that we have taken of the case only renders it necessary to determine whether the court erred in refusing to charge that the city could not be held liable for the wrong and injury complained of.

The distinction that exists between the various powers ordinarily exercised by municipal corporations has been pointed out on numerous occasions, and is well defined. In exercising certain powers, such corporations act for the public at large as governing agencies, and for that reason, when so acting, they cannot be held liable for a misfeasance. When acting in a public capacity, as governing agencies, the rule of respondeat superior has no application to acts done by the officers of such corporations, but the responsibility for a wrongful act rests with the officer, and not with the municipality. In the exercise of many other powers devolved upon municipal corporations, commonly termed "corporate powers," such bodies act for the special benefit of the municipality, or the municipality derives some profit, emolument, or advantage from their exercise, and in such cases the municipality is liable for acts of misfeasance done by its officers that are positively injurious to individuals.

In Maximilian v. Mayor, 62 N. Y. 160, Folger, J., says:

"There are two kinds of duties which are imposed upon a municipal corporation; One is of that kind which arises from the grant of a special power, in the exercise of which the municipality is as a legal individual. The other is of that kind which arises or is implied from the use of political rights under the general law, in the exercise of which it is as a sovereign. The former power is private, and is used for private purposes; the latter is public, and is used for public purposes. * * * In the exercise of the former power, and under the duty to the public which the acceptance and use of the power involves, a municipality is like a private corporation, and is liable for failure to use its power well, or for any injury caused by using it badly; but where the power * * * is conferred not for the immediate benefit of the municipality, but as a means to the exercise of the sovereign power for the benefit of all citizens, the corporation is not liable for nonuser nor for misuser by the public agents." Citing Eastman v. Meredith, 36 N. H. 284.

The distinction thus referred to is also recognized in the state from which this case comes, (Hannon v. County of St. Louis, 62 Mo. 313, 318,) and is stated, and supported by numerous citations, in Dillon on Municipal Corporations, (vide 4th Ed. §§ 966–968, 974.)

In the case at bar we feel constrained to hold that the wrongful act complained of was done by the city under color of a power which it exercises as a governing agent for the benefit of the public at large, and not for the advantage of the inhabitants of Kansas City, except as they form a part of the general public. The establishment of a public show, such as a menagerie, circus, or hippodrome, on a tract of land dedicated to a city or town for the purposes of a graveyard, and actually used as such, would constitute

a public nuisance. A city has no more right to license a show of that nature in a graveyard than it has to license it to locate on the public streets and thoroughfares; and we entertain no doubt that when a municipality undertakes to prevent or to abate a nuisance of that kind by means of its police force it is acting for the state as a governing agency, and not merely in the discharge of a purely corporate power or duty.

In the case of Haskell v. City of New Bedford, 108 Mass. 208, 211, Mr. Justice Gray, then on the bench of the supreme judicial court of Massachusetts, used the following language:

"Acts done by the mayor and aldermen, or the mayor alone, to keep the streets clear of obstructions, are acts done by them as public officers, and not as agents of the city; and for such acts the city was not liable to be sued;" citing Walcot v. Swampscott, 1 Allen, 101; Griggs v. Foote, 4 Allen, 195; Barney v. Lowell, 98 Mass. 570; and Fisher v. Boston, 104 Mass. 87.

In a comparatively recent case—Culver v. City of Streator, 130 Ill. 238, 22 N. E. Rep. 810—it was held that the city was not liable for the negligent act of one of its police officers while endeavoring to enforce an ordinance forbidding dogs to run at large without being muzzled, for the reason that in the making and enforcement of the ordinance the city was acting merely as agent of the state in the discharge of duties imposed by law for the promotion of the general welfare. The court said that the ordinance was passed in pursuance of the police power vested in the municipality, and that acts performed in the exercise of that power were done in a public capacity as a governing agency, and not for the special advantage of the municipality.

It is also very generally held that a city is not liable for wrongful acts committed by its police officers in enforcing city ordinances, or in making arrests for alleged violations of law or local ordinances, or while endeavoring to suppress an unlawful assemblage, because while acting in such matters, police officers are not mere servants of the municipality, and the rule of respondeat superior does not apply. Buttrick v. City of Lowell, 1 Allen, 172; Fox v. Northern Liberties, 3 Watts & S. 103; Calwell v. City of Boone, 51 Iowa, 687 [1]; Odell v. Schroeder, 58 Ill. 353; Elliott v. Philadelphia, 75 Pa. St. 347; Dargan v. Mobile, 31 Ala. 469; Little v. City of Madison, 49 Wis. 605, 6 N. W. Rep. 249; Trammell v. Russellville, 34 Ark. 105; Worley v. Inhabitants, 88 Mo. 106; Dill. Mun. Corp. § 975.

We can entertain no doubt, therefore, that for the acts complained of in the present case there is no right of redress against the city, assuming them to have been done or authorized by the city, 'as stated in the plea, for the purpose of preventing a public exhibition on a tract of land dedicated and used as a graveyard. The act of the municipality in that behalf was an exercise of a power vested in it to promote the general welfare, as contradistinguished from those corporate powers which it exercises for the special advantage of the municipality.

It was said in the course of the oral argument that the plea interposed by the city, that the tract of land in question was a graveyard, and that the city had acted with a view of preventing its dese-

[1] 2 N. W. 614.

cration, was a mere pretense; that in fact it had some ulterior purpose in view, and was seeking some private gain or advantage, when it committed the wrongful acts charged in the complaint. With reference to this statement, it is sufficient to say that no such suggestion is found in the pleadings. To the plea that the premises were held in trust by the city as a graveyard, that the license issued by the city conferred no right to give an exhibition at the place in question, and that the city had acted solely with a view of preventing a public nuisance, the plaintiff merely replied that it was not a graveyard, and that that fact had been judicially ascertained and adjudged in a previous suit, whereto the city was a party. We think, therefore, that the suggestion above mentioned is of no avail to the defendant in error on this record. We must take it for granted that the plea interposed by the city was made in good faith, and correctly states the purpose which inspired its action.

Furthermore, if it be true, as suggested, that the city knew that the premises were not a graveyard, and that they were in fact private property, and that it had some ulterior object in view, and intended to wrong and oppress the plaintiff, then it is difficult to escape the conclusion that the acts said to have been committed by the police with the sanction of the mayor were so utterly beyond the scope of any corporate power vested in the municipality, that it could not be held liable on that ground. Dill. Mun. Corp. §§ 968–970.

Our conclusion is that the circuit court erred in refusing to direct the jury to find a verdict in favor of the city, wherefore the judgment of the circuit court is reversed, and the cause remanded, with directions to grant a new trial.