Thomson, J.,
delivered the opinion of the court.
On the 7th day of April, 1892, the defendant, the city of Denver, was the owner of a steam roller, used for the purpose of rolling its streets, alleys and public places. On that day the roller was proceeding up Market street on its way to the City Park, to be there used by the board of public works in rolling the park. It had on hoard an engineer and fireman, and the order was that it should be preceded by a mounted policeman. When it had passed 24th street, the plaintiff was discovered approaching from the opposite direction in a buggy, when the engineer shut off the steam and stopped the machine. When-she was within a short distance of the roller there was an escape of steam from the safety valve of the engine, which frightened her horse, so that he turned suddenly around, overturned the buggy, throwing her violently to the ground, and causing her to sustain serious injury, to recover damages for which this action was brought. The machine was propelled and operated by steam. It was calculated from its character and appearance to frighten horses,' and it was being conducted to its destination at a time of the day when the public were using the street. The escape of steam was not by the voluntary act of the engineer, but was caused by closing the throttle and stopping the engine; and at the time it occurred could not have been prevented. The testimoiw of the defendant was that the plaintiff was warned by the police officer that the machine was ahead of her, and that, for safety, she should turn out into 25th street, which she had not yet reached, and avoid it; but that she was absorbed in conversation with a woman who was her companion in the buggy and gave no heed to the warning. It was also testified that the engineer called to her, after she *43 had passed 25th street, to turn around and go hack, but she kept straight on. Whether the engineer’s voice was loud enough to reach her was not shown. Her own testimony was that she did not see the policeman or the engineer, and heard no warning from any source. The testimony of the woman with her was to the same effect. Mr. Buntin, a witness for the plaintiff, testified that he saw the entire occurrence ; that there was no policeman or other person ahead of the roller, and that none appeared until after the accident. It was proven that the horse the plaintiff was driving was of a gentle disposition, was accustomed to be driven about cars and trains in motion, had frequently met cable and electric cars, and never became frightened before. The plaintiff had verdict and judgment, to reverse which this appeal is prosecuted.
The learned counsel for the city contends that the roller, at the time of the accident, was under the management and direction of the board of public works; that the municipality had no control over the action of the employees of the board who were moving the roller; and that, therefore, the maxim respondeat superior does not apply, and the city cannot be held responsible for the injury. There was evidence tending to show that the machine was moved by order of the mayor, and the jury so found; but whether this was the case or not, is a matter of not the slightest importance. The board of public works consists of three members, appointed by the governor of the state, by and with the advice of the senate. It has full and exclusive power to govern, manage and direct all parks, boulevards and pleasure ways within the city limits. It appoints and employs a secretary, an engineer, a superintendent of parks, and all inspectors needed by the city in the construction, repair and maintenance of public improvements. The salaries of the members of the board and of its several employees are payable out of the city treasury. The city also furnishes the board with office, stationery, instruments and all facilities for the performance of its duties. Session Laws, 1891, p. 76. The board of pub- *44 lie works is therefore one of the agencies for carrying out the objects and purposes of the municipality. It is not an independent body, but is a part of the corporation. Its duties are purely municipal and corporate, and in the performance of these duties it acts for the city. Such being the relation which it bears to the city, it is entirely immaterial whether its members are elected by the people of the municipality, or are appointed by the governor or otherwise. If every officer of the corporation held his place by the governor’s appointment, the powers, duties, obligations and liabilities of the city would be unchanged. The board of public works, no matter in what manner its members are chosen, or from what source their appointment may come, is merely one of the agencies of the city for the transaction of its corporate business : and if through the negligence or malfeasance of this board, or of its servants and employees, a cause of action accrues to an individual, it is the city which must respond. Barnes v. District of Columbia, 91 U. S. 540. The court instructed, the jury that if, at the time of the accident, the roller was under the control of the board of public works, then the city of Denver was not liable. This was a misstatement of the law, which, if the .verdict had been for the defendant, would have required a reversal.
The next question is whether the negligence of the defendant was the proximate cause of the injury. The duty of the city to keep its streets in proper repair and free from obstruction is not involved. Market street was in repair, and the presence of the roller upon it was not an obstruction within the legal definition of the term. The city authorities had the right to move the machine from one part of the city to another as occasion and necessity might demand, and it could not be so moved except over the public streets. There was nothing in the fact of its removal upon this occasion, upon which negligence could be predicated. But, having undertaken to remove it, the city was bound to exercise such reasonable care, both as to the time and manner of its removal, as might be necessary to guard against accident in consequence of its *45 passage over the street. The machine being, by reason of its construction and appearance, and the manner of its operation, calculated to frighten horses, it would seem that a time should have been chosen for its transportation when the street might be reasonably supposed to be free from horses and vehicles. No reason appears why the day was selected for the purpose instead of the night. But the roller was taken through the street at a time when it was being used by the public, and when its passage was necessarily attended with danger. The circumstances required the exercise of a high degree of care, and the use of every reasonable precaution to avoid accident. The necessity of such care was recognized by the persons under whose orders the machine was moved, and who acr cordingly directed that a mounted policeman should go in advance to notify persons in the street to prevent their horses from being frightened by avoiding it. If he performed his duty upon this occasion, if, as is claimed, he told the plaintiff that the roller was ahead of her, and directed her, in order to provide for her safety, not to proceed further on Market street, but to turn aside into 25th street, so that, if she had had her eyes and ears open, she would have understood that it was dangerous to go on, we cannot see but that the defendant exercised all the care which the circumstances required. Counsel insists that this state of things is exactly what the evidence shows. He says that the evidence of the warning having been given is positive, and that the contrary evidence is negative, and therefore of no value. We quote his language: “ The mere fact that the witnesses say that they did not see the officer give any warning, or did not see him, is not sufficient to overcome the direct statement of the officer himself as to what he did do, and is not evidence enough to permit the case to go to the jury.” While, as a general rule, the superiority of affirmative to negative testimony may be conceded, yet it does not follow that the latter is in all cases to be disregarded. Indeed, there are instances in which it furnishes important aid in determining the facts. In the very nature of things false affirmative testimony can be overthrown *46 only by evidence of a negative character. One witness testifies positively to the happening of an event; of two other witnesses who were present at the same time and place, and whose means of observation were equal to those of the first, one states that he did not see it, and the other testifies emphatically that it did not occur. The only real difference between the two statements is in the form in which they are made. Both were situated so as to have seen the occurrence if it took place. One says that it did not take place, and the other contents himself by saying" that he did not see it; but the testimony in either form has at least a tendency to disprove the statement of the witness who testified to the fact of the occurrence, and it should therefore go to the jury to be given such weight as they may consider it entitled to.
The plaintiff testified that although she was driving carefully, and looking out for whatever might be in her way, she neither saw nor heard the policeman. But counsel is in error in stating that the testimony of all the plaintiff’s witnesses was in this form. Mr. Buntin testified that he saw the whole occurrence; that there was no person going ahead of the roller; that there was no policeman there; and that the first time a policeman appeared upon the scene was after the plaintiff had been thrown from her buggy. It can perhaps be said that, after all, this only amounts to a statement that he did not see the officer ahead of the machine; but, even if its effect may be thus limited, taking into the account his situation with reference to the transaction as he gave it in his testimony, and the reasonable inference to be drawn from it that if the officer' had been there he would have seen him, the statement is still evidence of some weight, and entitled to some consideration, that the policeman was not there. The same observation applies to the testimony of the plaintiff and that of the woman who was with her. The question of the defendant’s negligence was, therefore, properly submitted to the jury upon the evidence.
Another point made by the appellant, upon which a reversal is asked, is contributory negligence of the appellee. The *47 argument is that she ought to have seen the roller in time to avoid it. There is no douht that travelers upon the highway are hound to look out, and must use the faculties with which they are endowed by nature ; hut the degree of such watchfulness and use of his faculties in a given case, to which an individual will be held, to escape the charge of contributory negligence, depends largely upon the circumstances of that particular case. It is not necessary that one, while driving upon an unobstructed street of a city, should proceed with the same circumspection and caution as if he were crossing railroad tracks upon which locomotives and trains are frequently passing and repassing. And a person will not give the same attention to a horse which he knows to he gentle and not easily frightened, as to one which is nervous and timid, and has a disposition to run awajr; nor is it required of him. In a case like the one at bar, a clear and undisputed state of facts might appear, upon which a court could say as a matter of law that the plaintiff was guilty of contributory negligence. But it very rarely so happens, and the conditions here fall far short of the case supposed. The plaintiff’s horse was gentle, had been driven about moving trains, was in the habit of meeting electric and cable cars, and never before, within plaintiff’s knowledge, had been frightened. If she had no information of the nature of the rolling machine, and its liability suddenly, at some unexpected moment, to emit steam, even if she had seen it ahead of her, a court could hardly say that, with the known character and history of her horse, it was contributory negligence in her to continue in the direction in which she was going.
Upon the evidence in this case the questions of the negligence of the defendant and of the contributory negligence of the plaintiff, were solely for the determination of the jury under the instructions of the court. These questions were fairly submitted by instructions which clearly declared the law, and the jury’s verdict is a final disposition of them. The judgment will be affirmed.

Affirmed.