CITY OF DENVER v. PORTER.

DENVER, U. & P. R. CO. v. PORTER.

(Circuit Court of Appeals, Eighth Circuit. November 27, 1903.)

Nos. 1,837, 1,838.

**1. FIRES—SPREAD—OWNERSHIP OF PROPERTY—RAILROAD—LIABILITY.**

Where a railroad company owned a tract of unplatted low land, which was not used for railroad purposes, and permitted the city to use the land as a public dumping ground, the railroad retaining no substantial control over the conduct of the work, and no fires were set out or maintained in the dump with the railroad's consent or for its benefit, the railroad's ownership of the ground, or the fact that on one occasion it had made suggestions as to the filling, and had twice assisted in subduing fires which had broken out in the dump, were insufficient to render the railroad liable for damages to plaintiff's building from fire communicated from a fire originating in the dump.

**2. SAME—NUISANCE.**

The collection of refuse or waste materials of a city, and the deposit thereof by the city authorities on land with the consent of the owner, is the proper exercise of a municipal function, and hence the maintenance of such dump is not of itself a nuisance.

**3. SAME—MUNICIPAL CORPORATIONS—GATHERING REFUSE—POWERS—MINISTERIAL FUNCTIONS.**

The gathering of refuse and waste by a city, and the establishment, maintenance, and operation of dumping grounds for its ultimate disposal, under the direction of the officers of the city health department, is a duty of local or municipal concern, not performed in the exercise of any governmental function; and hence the city is liable for the negligence of its officers and agents engaged in the performance of such work.

**4. SAME—LOCAL LAWS—FEDERAL COURTS—APPLICATION.**

Whether a municipal corporation in a state is responsible for negligence of its officers in any stated case is a matter of local law, which it is the duty of the federal courts within such state to follow, when made manifest by legislative action or the decisions of the highest state court.

**5. SAME—INSTRUCTIONS.**

Where, in an action to recover damages from fire originating in a dump maintained by defendant city, the court repeatedly charged that the city was not liable unless it omitted the exercise of ordinary care and diligence in the management of the dump, an instruction defining negligence as the failure to observe for the protection of the interests and property of another person ordinary care, precaution, and vigilance was not error, for failure to include the element of duty owing by the city to plaintiff.

**6. SAME—CONSTRUCTION OF INSTRUCTIONS.**

Instructions to the jury must be considered in their entirety, and not by excerpts isolated from their context.

In Error to the Circuit Court of the United States for the District of Colorado.

Wm. W. Field (E. O. Wolcott, J. F. Vaile, C. W. Waterman, and E. N. Clark, on the brief), for plaintiff in error railroad company.

Geo. Allan Smith (Henry A. Lindsley, on the brief), for plaintiff in error city of Denver.

Edwin H. Park, for defendant in error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and HOOK, District Judge.

HOOK, District Judge. This was an action brought by James R. Porter against the Denver, Utah & Pacific Railroad Company and the city of Denver to recover damages resulting from the destruction of a building belonging to him by fire alleged to have been caused by their wrongful acts and negligence. Porter recovered a judgment in the Circuit Court against both the railroad company and the city, and they severally prosecuted writs of error from this court.

Porter was the owner of a small tract of land within the limits of the city of Denver, upon which had been erected the building in question. Contiguous to his premises was a tract of unplatted, low-lying land belonging to the railroad company, but which was not used by it for railroad purposes. About 20 years prior to the occurrence of the fire which destroyed Porter's building, the city authorities, with the assent and acquiescence of the railroad company, designated the land of the latter as a public dumping ground, and thereafter there was deposited thereon the refuse of the city, such as ashes, paper, straw, manure, boxes, and scrap metal, much of which was gathered by the city carts from the alleys and conveyed to this place of disposal. The garbage of the city, using that term in its restricted sense, was not deposited at this place. The municipal authorities delegated the supervision and control of the dumping ground to the health department, and officers or employés of that department were almost constantly present, charged with the duty of directing the placing and disposition of the waste materials in a proper manner for the confinement thereof within the limits of the dumping ground, and the prevention of combustion and the spreading of fire. On the 2d day of May, 1901, a fire originating in the dump escaped the control of those in charge, and, driven by a high wind, spread over the intervening ground to Porter's building, causing the destruction and damage complained of.

The judgment against the railroad company can be upheld, if at all, only upon the ground that it was the owner of the premises upon which the fire originated and consented to the use thereof by the city for the purpose mentioned. There was no substantial evidence showing that the company retained or exercised any supervision or control over the actual conduct of the work. The mere fact that on one occasion during the long period of years in which the dump was maintained an official connected with the company made a suggestion as to the filling of the ground, and that servants of the company employed in that vicinity twice assisted in efforts to subdue fires which had broken out in the dump, is insufficient for that purpose. No fires were set out or maintained in the dump with the company's consent or for its benefit. The collection of the refuse or waste materials of a city, and the deposit thereof in suitable localities by or under the direction of its agents or representatives, is in the exercise of a proper municipal function. A disposition of the constant accumulation of such materials is not only lawful, but also necessary to the convenience of the public. The consent by an owner of land that the proper authorities of a city may use it for such purpose is a letting for a lawful use. The location of the land of the company

and its topographical features made it well adapted to the purpose for which the city used it. No question is made concerning this. The maintenance of a public dump thereon was not in itself a nuisance. It was established under the express authority of the ordinances of the city, and pursuant to power delegated by the Legislature of the state. In the absence of negligent management, the presence of the dump was no more of a menace to neighboring buildings than any one of many manufacturing and business industries which are common in populous centers. If one lets the use of his premises to another for a lawful purpose, not inherently dangerous or noxious to his neighbors or their property, and reserves or exercises no supervision over the manner in which the business is conducted, he is not liable for damages arising from the mere negligent acts of the occupant. This rule is elementary, and the undisputed facts appearing in the record require its application in the case of the railroad company. In view of these considerations, it follows that the circuit court should have granted the request of the railroad company at the conclusion of the trial that the jury be instructed to return a verdict in its favor.

The mere fact that the fire which destroyed Porter's building originated on the land of the railroad company, and spread beyond its confines, does not, in the absence of other considerations, give rise to a liability for the damage done. The English authorities cited by counsel to the effect that a liability arises whether there was or was not negligence in the origin or spread of the fire, while illustrative of the rule of the ancient common law or custom of the realm, have not been followed in this country, and in England they are more valuable in their historical aspect than as legal precedents for the present day; their doctrine having been long since abrogated by acts of Parliament. The rule which now prevails, in the absence of special regulation by statute, is that liability depends upon the existence of negligence in the origin of the fire, or in its control after it has been started, or in some special cases in failing to provide means for its extinguishment. Without negligent act or omission, there can be no responsibility for the ensuing damage. Negligence in such cases is the gist of the action, and it is not presumed, but must be affirmatively alleged and proved. Musselwhite v. Receivers, 4 Hughes, 166, Fed. Cas. No. 9,972; World's Columbian Exposition Co. v. Republic of France, 91 Fed. 64, 33 C. C. A. 333; Bock v. Grooms (Neb.) 92 N. W. 603; Vansyoc v. Cemetery Ass'n (Neb.) 88 N. W. 162; Planters' Warehouse & Compress Co. v. Taylor, 64 Ark. 307, 42 S. W. 279; Sweeney v. Merrill, 38 Kan. 216, 16 Pac. 454, 5 Am. St. Rep. 734; McNally v. Colwell, 91 Mich. 529, 52 N. W. 70, 30 Am. St. Rep. 494; Callahan v. Railway Co., 23 Iowa, 562; Catron v. Nichols, 81 Mo. 80, 51 Am. Rep. 222.

In the case against the city there was a distinct complaint that its servants were guilty of negligence in the supervision and management of the dump, in that they permitted the deposit of ashes containing fire in the midst of large quantities of combustible material; that, when fires occurred in the dump, proper care and prudence were not exercised to prevent them from spreading; and that

by reason of these acts and omissions the damage complained of was caused. Assuming for the moment that those in charge of the dump were the servants of the city in its private or corporate capacity, as distinguished from its character as a political subdivision of the state, it is sufficient to say that the issues as to the origin of the smouldering fires in the dump, the origin of the conflagration which spread to Porter's premises, whether the combustible refuse which led the flames over the intervening ground was blown there by the winds or placed there by Porter's tenants, and whether ordinary care and diligence were exercised by those servants, were determined by the jury against the contentions of the city, and the record does not show that their conclusion is unsupported by the evidence and such reasonable inferences as might be drawn therefrom.

It is contended with much earnestness and ability by counsel that in the gathering of the refuse and waste of the city, and the establishment, maintenance, and operation of dumping grounds for its ultimate disposal, the officers of the health department were not engaged in the performance of a duty imposed upon the city for its private or corporate profit, pecuniary or otherwise, but that, on the contrary, those officers were the agents and representatives of the public, acting for the public benefit, and that therefore no liability for their negligence rested upon the city; that, although they received their appointment and derived their compensation from the municipality, nevertheless the essential character of their powers and duties determined the identity of their principal, whether the city, on the one hand, or the state, in its sovereign capacity, upon the other; that the powers they were exercising and the duties they were performing pertained to the general police power of the state; and that use was made of the city merely as a convenient mode of exercising a function of government—of accomplishing the purpose of the state through local instrumentalities. In aid of this contention, the doctrine of Maxmilian v. Mayor, 62 N. Y. 160, 20 Am. Rep. 468, is invoked. In that case the plaintiff's intestate was run over by an ambulance driven by an employé of the commissioners of public charities and correction, and he died from the effect of the injuries he received. Upon a consideration of the nature of their duties and the source of their power, it was held that the commissioners were public officers of the state, and not of the city in its private or corporate character, and that the city was not liable for the acts of the servants selected by them.

The line of distinction between the two classes of cases was drawn by the court as follows: "There are two kinds of duties which are imposed upon a municipal corporation: One is of that kind which arises from the grant of a special power, in the exercise of which the municipality is as a legal individual. The other is of that kind which arises or is implied from the use of political rights under the general law, in the exercise of which it is as a sovereign. The former power is private, and is used for private purposes; the latter is public, and is used for public purposes. The former is not held by the municipality as one of the political divisions of the state; the latter is. In the exercise of the former power, and under the duty to the public

which the acceptance and use of the power involves, a municipality is like a private corporation, and is liable for a failure to use its power well, or for an injury caused by using it badly. But where the power is intrusted to it as one of the political divisions of the state, and is conferred, not for the immediate benefit of the municipality, but as a means to the exercise of the sovereign power, for the benefit of all citizens, the corporation is not liable for nonuser nor for misuser by the public agents." To the same effect is Haight v. Mayor (D. C.) 24 Fed. 93, where the damage was caused by a steamboat belonging to the city, but in the exclusive use of the commissioners of charities and correction. It was there said that the commissioners constituted an independent board over which the city had no control, and which did not act for the use or benefit of the city in the discharge of any' of its functions or duties. Other common instances of the application of the rule exempting municipalities from liability are found in cases of negligence of members of a fire department (Mayor v. Workman, 67 Fed. 347, 14 C. C. A. 530), and inefficiency of the apparatus or equipment of such department (Fisher v. Boston, 104 Mass. 87, 6 Am. Rep. 196); of police officers (City of Kansas City v. Lemen, 57 Fed. 905, 6 C. C. A. 627); in the treatment of prisoners (New Kiowa v. Craven, 46 Kan. 114, 26 Pac. 426); of employés of the department of public instruction (Ham v. Mayor, 70 N. Y. 459), and in the buildings pertaining to that department (Lane v. Woodbury, 58 Iowa, 462, 12 N. W. 478); of inspectors of steam boilers (Mead v. New Haven, 40 Conn. 72, 16 Am. Rep. 14); of city officials in the execution of sanitary regulations adopted for the purpose of preventing the spread of contagious diseases (Ogg v. City of Lansing, 35 Iowa, 495, 14 Am. Rep. 499); in the management of public hospitals (Benton v. City Hospital, 140 Mass. 13, 1 N. E. 836, 54 Am. Rep. 436); and in the treatment of the sick (Barbour v. Ellsworth, 67 Me. 294). These cases, relating, as they do, to matters directly affecting the peace, morals, health, education, and good order of the people, present obvious examples of the exercise of the police power of the state. The promotion of the welfare of the people in those respects is the paramount duty of the state, involving the exercise of governmental functions in the highest degree. Officers and agents whose powers, under the law, are of that character, are, in respect of the exercise of such powers, the representatives of the state, and not of its local or subordinate divisions.

In the application of the rule to particular cases there is, however, some confusion among the authorities, doubtless due in a measure to a not uncommon practice of casting upon municipal officers duties of a governmental character, and also duties that are purely local, and also to the fact that in many instances those who are invested with authority relating to the general powers of the state receive their appointment mediately through municipal machinery, and in other instances officers possessing purely local or corporate powers owe their appointment to a state board or state officer. Although the lack of control by the city over the commissioners of charities and correction seems to have been one of the considerations which led to the conclusion in Maxmilian v. Mayor and in Haight v. Mayor, supra, the true

test of corporate liability, in the absence of statutory regulation, depends upon the nature of the duties with which the officers are charged. The power to appoint and discharge, and the duty to compensate the officers for whose negligence responsibility is sought to be fastened upon a city, is not ordinarily determinative of the question of liability. This is notably so in the case of members of the fire and police departments, whose appointment, compensation, and control are generally committed to the municipal authorities, but for whose negligent acts the cities are not liable. On the other hand, those performing local or municipal functions are municipal officers, for whose acts the corporation is liable, irrespective of the source of their appointment or compensation. Barnes v. District of Columbia, 91 U. S. 540, 23 L. Ed. 440; District of Columbia v. Woodbury, 136 U. S. 450, 10 Sup. Ct. 990, 34 L. Ed. 472; Denver v. Peterson, 5 Colo. App. 44, 36 Pac. 1113.

It is urged by counsel that the establishment and maintenance of the dumping ground, and the gathering and deposit there of such refuse of the city as the evidence shows the dump was used for, appertained to sanitation and the general health of the public, and, the control and management thereof having been properly intrusted to the health department of the city, the acts of the officers and employés of that department in respect of such duties were not the acts of municipal representatives. But in almost all affairs of purely local concern some indirect relation may be traced to a matter of health, safety, or other subject of governmental cognizance. The test is not that of casual or incidental connection. If the duty in question is substantially one of a local or corporate nature, the city cannot escape responsibility for its careful performance because it may in some general way also relate to a function of government. Thus, from very early times the maintenance of highways has been of general interest. Nevertheless the overwhelming weight of authority is to the effect that the superintendence and care of the streets and alleys of a city, and all that directly pertains thereto, are peculiarly in the class of municipal duties, for the neglect of which the city, in its corporate character, is liable. In Barney v. Mayor, 40 Fed. 50, the injury complained of was caused by the negligent acts of employés of the commissioner of street cleaning of the city of New York who were engaged in removing refuse from the streets. As in the case before us, it was contended that such work was for the safeguarding of the public health, but the court said that it did not seem reasonable to treat the commissioner as an officer of the general public, rather than of the city. "His duties, unlike those of the officers of the departments of health, charities, fire, and police, although performed incidentally in the interest of the public health, are more immediately performed in the interest of the corporation itself, which is charged with the obligation of maintaining its streets in fit and suitable condition for the use of those who resort to them." To the same effect is Missano v. Mayor, 160 N. Y. 123, 54 N. E. 744, which was an action to recover damages for the death of a child who was run over and killed by a horse attached to an ash cart of the street-cleaning department. The proper disposition of the sewage of a city has even a more direct

influence upon the health of the inhabitants, yet it is held that in the maintenance of its sewers a city acts ministerially, and negligence in respect thereto may be the basis of an action.    Murphy v. Indianapolis, 158 Ind. 238, 63 N. E. 469; Williams v. Greenville, 130 N. C. 93, 40 S. E. 977, 57 L. R. A. 207, 89 Am. St. Rep. 860; Hamlin v. Biddeford, 95 Me. 308, 49 Atl. 1100; Denver v. Rhodes, 9 Colo. 554, 13 Pac. 729. ·

We are of the opinion that in the case before us the removal of the waste and refuse from the alleys of the city in the city carts, the deposit thereof upon the dumping grounds near Porter's premises, and the supervision of such work and of the dump itself were of local or municipal concern, and that the officers and employés of the health department of the city, in the discharge of their duties in connection with such work and supervision, were acting as the representatives of the city, for whose negligent acts or omissions it would be liable. The fact that part of the refuse wasted upon the dump under the direction of the officers stationed there was hauled in private vehicles from private premises leads to no different conclusion.    The dump was under the exclusive control of those officers, and they represented the local or corporate interests of the city rather than the state in its sovereign capacity.

Whether municipal corporations in the state of Colorado are responsible for negligence in any stated case is a matter of local law, which it is the duty of the courts of the United States within that state to follow, when made manifest by legislative action or by the decision of its highest court.    Detroit v. Osborne, 135 U. S. 492, 10 Sup. Ct. 1012, 34 L. Ed. 260.    In Denver v. Dunsmore, 7 Colo. 328, 3 Pac. 705, the Supreme Court of that state held that an implied duty rested upon the municipalities to keep in repair the public thoroughfares within their limits, for a neglect of which an action would lie against them.    It may also be observed in this connection that in Denver v. Peterson, supra, the city was held liable by the Court of Appeals for carelessness in the operation of a steam roller in charge of the board of public works.    We have not overlooked Conelly v. Mayor, 100 Tenn. 262, 46 S. W. 565, where the injury was caused by the negligent driving of a street-sprinkling cart, or Condict v. Jersey City, 46 N. J. Law, 157, in which it was held that the city was not liable for the negligence of an employé of the board of public works in removing ashes and other refuse from receptacles on a sidewalk to a public dumping ground.    To the extent that these cases are not founded upon local statutes or conditions, we are unable to follow them.

It is contended that the circuit court committed error in charging the jury that "negligence is the failure to observe, for the protection of the interests and property of another person, ordinary care, precaution, and vigilance," in that there was omitted from the definition the vital element of legal duty owing by the person charged with negligence.    There have been many attempts by courts and text-writers to define actionable negligence, but for the ends of this case it would be profitless for us to indulge in an analytical consideration of the various definitions, or to follow counsel in their criticisms of the one

adopted by the circuit court. The entire charge of the circuit court—and the charge is to be taken in its entirety—shows that the dominant thought which was repeatedly impressed upon the jury in apt and precise language was that the city was not liable unless it omitted the exercise of ordinary care and diligence in the management of the dump. The duty to exercise that measure of care and diligence to prevent the spread of fire rested upon the city. The definition of negligence, as explained and qualified to fit it to the facts of the case, is not subject to criticism, whatever might be said concerning it if it stood alone. Instructions to a jury are to be considered in their entirety, and not by excerpts isolated from their context. Northern Pacific R. Co. v. Babcock, 154 U. S. 190, 201, 14 Sup. Ct. 978, 38 L. Ed. 958; Western Coal & Mining Co. v. Ingraham, 70 Fed. 219, 17 C. C. A. 71; Kerr-Murray Mfg. Co. v. Hess, 98 Fed. 56, 38 C. C. A. 647.

We have examined the other assignments of error, including the one predicated upon the refusal of the Circuit Court to hold that the storing on Porter's premises by his tenants of combustible salvage taken from the dump was contributory negligence preventing a recovery, but find none which are well founded or which require more special mention.

The judgment against the railroad company is reversed, and the case, as to it, is remanded to the court below for a new trial. The judgment against the city of Denver is affirmed.