[No. 5595.]
[No. 3273 C. A.]

THE CITY AND COUNTY OF DENVER v. MAURER.

1. **Municipal Corporations—Liability for Negligence of Servant**—A municipal corporation is not liable for the negligence of its servants acting in the performance of governmental and public duties committed to the municipality.

Otherwise, where the duty is a private and corporate one. —(212)

(14)

The storm sewers of a city form part of the improvement of the street. The refuse and offal of the street necessarily accumulate there. The flushing of the sewers is the removal of this unsanitary condition which, in the improvement of the street, the city itself has produced, and a mere detail ·in the performance of the general duty of the city to care for its streets. It is therefore a private and corporate duty, and a pedestrian who, without fault upon his part, trips upon the hose stretched across the sidewalk for this purpose, is entitled to an action.—(214, 215)

2.  Contributory Negligence — In Walking — A pedestrian is not under duty to keep his eyes continually upon the walk before him. · He has a right to assume that the public walk is free from obstructions, and, exercising reasonable ˙care, to· act upon this assumption. That the place is much frequented and many persons passing to and fro; that the hose which occasioned the injury was the color of the walk; that the plaintiff's attention was necessarily diverted at the instant of receiving injury, and that there were circumstances from which it might be inferred that the hose was so manipulated that, without notice to the plaintiff, it was made to strike him, are circumstances to be considered in determining the question of contributory negligence.—(218, 219)

3.  Negligence — Usage — That a particular method of performing a corporate duty has, without accident or injury to any person, been observed for many years, is evidence of due care, its weight varying with the conditions, but does not, as matter of law, exonerate the municipality from the charge of negligence. —(215-217)

4.  Trials — Question for Court or Jury — Where there is a reasonable doubt as to the inferences to be drawn from the facts in evidence, the question of negligence and contributory negligence must be left to· the jury.—(220)

*Appeal from Denver District Court*—Hon. PETER L. PALMER, Judge.

Mr. HENRY A. LINDSLEY, city attorney, Mr. G. Q. RICHMOND, and Mr. F. W. SANBORN, for appellee.

Mr. GEORGE F. DUNKLEE, and Mr. O. E. JACKSON, for appellant.

Mr. JUSTICE MUSSER delivered the opinion of the court:

The appellee, who was plaintiff below, was walking on the sidewalk along Seventeenth street in the city and county of Denver, a municipal corporation, and at the intersection of that street with Glenarm street she tripped on a water hose about three inches in diameter on the outside, was thrown down and injured. There is evidence that the hose struck her and caused her to fall, and also evidence that her foot struck the hose as it lay on the walk, causing her to fall. The point where the accident occurred was in the business part of the city and many persons were constantly passing to and fro on the sidewalk, whereon the hose lay. At the intersection of the streets certain employees of the city were engaged in flushing a storm sewer with the offending hose. They attached this hose to a hydrant near the curb line on Seventeenth street and ran it diagonally across the sidewalk a length of twenty-five or thirty feet to a catch basin of the storm sewer at the curb on Glenarm street. In flushing storm sewers throughout the city it was the custom at such places to stretch the hose across the sidewalk from hydrant to catch basin and for one of the employees to stand on the sidewalk near the hose and warn passers-by of its presence. No one was ever known to trip over a hose before. There is evidence that the warning was not given until the plaintiff had fallen, and evidence that it was given before she reached the hose. At the points where pedestrians usually step from the sidewalk to cross either Seventeenth or Glenarm, there were sub-curbs lower than the main curb, and between each sub-curb and the main curb was a sunken space about twelve inches wide. The hose could be readily stretched along the curb and between the main and sub-curbs around the corner from hydrant to catch basin and thus the sewer could be as readily flushed, and the placing of the hose on the sidewalk and above

its level, at places usually passed over by pedestrians, would be entirely avoided. The plaintiff brought this action to recover damages, alleging, in substance, that she had been injured in consequence of the negligence of the city in failing to keep its streets in a reasonably safe condition for travel, and setting forth the facts relative to the hose and her tripping on it. The jury awarded her $1,250.00, and from a judgment for that amount the city appealed. At the trial the defendant offered to prove that, in the interest and for the benefit of the public health and welfare, the defendant maintained a department known as the Sewer Flushing Department, and that in the exercise of the functions of that department it was necessary to flush the sewers of the city and to use hose, as the hose in this case was used, for the purpose of flushing the sewer, and this hose was so used at the time for the sole purpose of promoting the public health and welfare. The court denied the offer and the defendant assigns as the first error, this denial of the court.

The authorities agree that two classes of general duties are imposed upon a municipal corporation. One is governmental, and the municipality is not liable for negligence of employees occurring in the performance thereof. The other is private and corporate, and the municipality is liable for negligence of employees occurring in the performance thereof.— *City of Denver v. Davis,* 37 Colo. 370.

The authorities are practically agreed in placing certain general duties in the class that is governmental, and among those is the general duty of the preservation of the public health. For this reason counsel for the city contends, with great earnestness and ability, that it ought to have been permitted to put in the evidence that was excluded. There is considerable conflict among the authorities when it

comes to the application of the general rule to specific
·cases. In reading the authorities, one is impressed
with the fact that often some detail in the perform-
ance of one class of general duties, partakes partly
or wholly of the nature of another class of general
duties. Thus, frequently, details in the performance
of the general duty of caring for the streets partake
of the nature of duties performed in the preservation
of public health. It also appears that a municipality
may be immune from negligence occurring in the
performance of a detail in one class of duties, while
it would be liable for negligence in the performance
of a like detail in another class; as, for instance,
while it would not be liable for the negligence of its
firemen in stretching a hose on a sidewalk while
using it to put out a fire, it might be liable for the
negligence of employees in stretching a hose on the
sidewalk while using it in the care of its streets. It
is said in *Denver v. Davis, supra,* p. 376:

"The overwhelming weight of authority is to the
effect that the superintendence and care of the
streets and alleys of a city, and all that directly per-
tains thereto, are peculiarly in the class of municipal
duties, for the neglect of which the city, in its cor-
porate character, is liable."

The same thing was stated by the U. S. circuit
court of appeals (8th. cir.), in *City of Denver v.
Porter,* 126 Fed. 288 at 293. Let it be inquired
whether the detail of flushing the storm sewer in this
case, though done solely for the preservation of
health, was done in the performance of the general
duty of preserving health, or done as one of the
necessary details in the superintendence and care of
the streets. This storm sewer was a subterranean
channel constructed by the city to carry away the
surface water which came upon the streets. Neces-
sarily the street was so graded and constructed that

the water therefrom would collect at the catch basin which formed a part of the sewer, run into it and flow away through the channel provided. To the ordinary mind this storm sewer formed a part of the improvement of the street and pertained primarily to the care of the street. Obviously as the water flowed into the catch basin, it would carry with it refuse from the street, some of which would remain. At other times refuse would be blown, or otherwise forced, through the opening into the basin. This refuse would remain to breed disease and noxious odors, if not removed. One more act was necessary to keep the street in a reasonably fit and suitable condition for use, and that act was the flushing of the storm sewer to remove this menace to the health and comfort of the people. How in reason can the act of flushing that sewer, under these circumstances, be anything more than a detail in the performance of the general duty of the city to care for its streets? How can it be said that the city, in its private corporate character, could create a condition that was a menace to the public health, and when it proceeded to remove that condition, it acted in its public governmental character in the performance of a public duty cast upon it by the sovereign state? The state had nothing to do with that storm sewer. It belonged exclusively to the city of Denver. When the city, acting in its private corporate character, by means of that sewer, created on its streets a condition that menaced the health and comfort of the community, no authorities need be cited to show that it was its private corporate duty to remove that condition from its streets. It follows, therefore, that the flushing of that sewer, though done to preserve health and comfort, was not done primarily in the performance of the governmental duty relating to the preservation of health, but was done in the discharge of the gen-

eral duty of caring for the streets; the same as the gathering of refuse from the streets, though pertaining to the preservation of health, was held to be a detail in the care of the streets, in *Denver v. Davis,* and in *Denver v. Porter, supra,* and in *Missano v. The Mayor,* 160 N. Y. 133, with the additional feature in the case at bar, that the unhealthy condition removed by the flushing of the storm sewer was created by the city itself.

The evidence offered was, therefore, immaterial and properly excluded.

The defendant contends that inasmuch as it appears without contradiction, that the method adopted to flush this storm sewer had for years been employed for the same purpose all over the city without accident, the city was, as a matter of law, free from negligence. Many authorities are cited in support of this contention. It will serve no good purpose to review them. A reading of them discloses that the length of time a condition has existed, without accident, was not the only element which impelled the courts to declare freedom from negligence as a matter of law. Other conditions were present, which, with the lapse of time, more or less strong under the circumstances of each particular case, governed the several courts in arriving at conclusions. In many, if not all, of the cases cited, an extraordinary combination of circumstances was necessary before an accident could happen, and in consequence the happening of the accident was a remote contingency not to be reasonably expected in the nature of things. In all of the authorities also, the condition out of which the negligence arose had been fixed at all times in the same place, for many years, and in some instances the plaintiffs knew of the condition. In the present case the hose was on the sidewalk once or twice a week, only, and then only for a short time

each day, and the plaintiff had passed this point every day, or every other day for six years, and never saw a hose there before. The fact that the defendant has employed this general method throughout the city for a long time without accident may be some evidence of the exercise of reasonable care, whose weight with the jury would no doubt vary with the conditions existing in the localities where it is employed, but it cannot alone be taken as conclusive evidence. Even if the general method was reasonably safe, the jury may have been convinced that it was negligently carried out in this instance. In her testimony, plaintiff said:

"On that day, after coming out of the shop with my work, I walked along and when I got up near to the corner there, I looked around to see if my car was coming, and just within that time, as I looked around for my car something *struck me* and I fell, fell forward like this (illustrating)."

And again:

"You know I looked around for my car to see if my car was coming but I didn't see the car; I just then slammed right down; something *struck me* and I fell."

And on cross-examination:

"Q. Had you turned when you struck this object?

"(The witness had testified she had turned her head to look for a car.)

"A. Yes, sir.

"Q. Just as soon as you turned?

"A. Just as soon as I turned my head that *struck me* and I fell right down."

And again:

"Q. What foot was it that struck the hose?

"A. I don't know; it *struck them* both."

Plaintiff testified that she heard no mention of the hose until after she had fallen, and this seems to be corroborated in a way by one of defendant's witnesses. He said:

"She (the plaintiff) was coming down the street and I heard my partner tell her to look out for the hose, and the next thing she was down, and I ran from the hole I was flushing to help her up. Q. Did you hear him say anything to her about the hose? A. Yes, he told her to look out for the hose but I didn't catch what she said because she was hollering about her hand."

If she was not warned about the hose until she was crying out about her hand, which was injured, the warning came after she had fallen. From all this the jury may have concluded that, instead of plaintiff's feet striking the hose as it lay inert upon the walk, as defendant contends, the hose was so manipulated or handled on the walk, by the man who apparently was handling it at one end, or it was so operated, that at the moment, without due warning to plaintiff, it was made to strike her, thus causing her to trip over it. A city is not an insurer of the safety of its streets, and it performs its whole duty when it exercises reasonable care to keep them in a reasonably safe and suitable condition for travel, as the defendant contends. Whether it has exercised reasonable care in a particular case is usually a question for the jury. The contention of defendant that the general method that it had adopted in flushing storm sewers is, as a matter of law, the exercise of reasonable care, cannot be determined in this case, unless certain circumstances and the testimony of the plaintiff be entirely ignored, or be given a certain meaning to support defendant's contention, while another meaning may be deduced therefrom. In this instance the question was properly submitted to the

jury and they no doubt took into consideration all the facts and circumstances favorable to the city and gave them such weight as they deserved.

The defendant also insists that under the evidence, the plaintiff was, as a matter of law, guilty of contributory negligence, but for which the accident would not have happened. It happened in the business part of the city, where many people were passing to and fro and where many things necessarily divert one's eyes from the walk. There was evidence that the hose was the same color as the walk. The plaintiff turned her head to look for a street car. She said the hose struck her. It was her duty to exercise reasonable care and prudence when walking on the sidewalk. She, however, was not bound, at her peril, to keep her eyes fixed on the walk constantly. She had a right to believe that the walk was free from obstructions and to act with reasonable prudence upon such belief. Whether she did act with reasonable care and prudence, under the circumstances, was eminently a question for the jury.—*Chicago v. Babcock,* 143 Ill. 362; *Lamb v. Worcester,* 177 Mass. 82; *Lattimore v. Union E. L. & P. Co.,* 106 S. W. 543.

The defendant insists that the case of *Strutt v. Brooklyn & R. B. R. Co.,* 45 N. Y. S. 728, ought to be followed here. In that case plaintiff's intestate tripped over a hose lying in plain sight on a wharf. Very few people were on the wharf at the time; the nearest was twenty feet away. It does not appear that there was anything occurring that necessarily diverted the eyes of the deceased from the path before him. The court held that the deceased was guilty of contributory negligence, and based its reversal of the judgment for plaintiff solely on that ground. In the case at bar, however, the attention of the plaintiff was necessarily diverted from the sidewalk, by looking for a car which she desired to

board. Her evidence, which must be considered, shows that many people were passing to and fro on the sidewalk at the time, and that the hose was the color of the walk. The fact that others were near her on the walk; the similarity of color between the walk and the hose; that plaintiff was struck by the hose, and that her attention was necessarily diverted, were not present in the New York case. If they had been, the court would have evidently found differently, for it said: "If this accident had occurred at night, or where the plaintiff was surrounded by other passengers, so as to render his observation difficult a very different question would be presented."

In the case of *Lattimore v. The Union E. L. & P. Co., supra*, the testimony, so far as the contributory negligence of plaintiff are concerned, was somewhat similar, though less favorable to the plaintiff than the testimony in the case at bar, and the court held that whether or not the plaintiff was guilty of contributory negligence "was under the facts palpably a question to be determined by the jury." It is true that in the *Lattimore case*, the hose was stretched taut across the walk and from four to eight inches above it, but that fact could make no difference on the question of contributory negligence of plaintiff, for the hose could at least have been as readily seen stretched taut across and near the walk as it could be if lying on the walk. The question of negligence of this defendant and the contributory negligence of this plaintiff were resolved against the contention of defendant by the court below, in denying a motion for nonsuit, and by the jury in its verdict. Certain observations were made by this court concerning negligence and contributory negligence in *Lord v. Pueblo S. & R. Co.*, 12 Colo. 396. It was there said that these questions are generally for the jury whose province should not be invaded by the courts, except

in the clearest of cases, and that where the evidence is conflicting, or facts and circumstances from which the jury may reasonably draw an inference of negligence are shown, or when the determination of the question of negligence depends upon the inference to be drawn from a variety of facts and circumstances in the consideration of which there is room for substantial difference of opinion, then the question of negligence should be submitted to the jury under proper instructions. And in *Jackson v. Crilley,* 16 Colo. 103, it is said that where there is any reasonable doubt as to the inference to be drawn from the facts, the question of negligence should be submitted to the jury.

And now, upon motion for rehearing, after again carefully considering the briefs of the parties and the testimony, this court feels that, considering this case in the most favorable light in which it may be reasonably considered in behalf of the defendant, under all the facts and circumstances, there is room for a substantial difference of opinion in the consideration of the evidence on the question of negligence, and that there is a reasonable doubt as to the inference to be drawn from all the facts and circumstances on that question, and for these reasons the questions of negligence and contributory negligence were rightly submitted to the jury under proper instructions, and their verdict is binding here.

The former opinion will be withdrawn and this opinion filed in lieu thereof; the motion for rehearing will be denied and the judgment of the lower court will stand affirmed.       *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE CAMPBELL concur.

Rehearing denied.